### FOR THE

## COUNTY OF ORANGE.

### MARCH TERM, 1848.

PRESENT,

Hon. STEPHEN ROYCE, CHIEF JUDGE,
Hon. ISAAC F. REDFIELD,
Hon. DANIEL KELLOGG, } ASSISTANT JUDGES.
Hon. CHARLES DAVIS,

---

## WILLIAM B. MASON v. SCHOOL DISTRICT No. 14 IN BROOKFIELD.

If a meeting of a school district be duly warned by the clerk, without any application to him in writing for that purpose, and a meeting be held pursuant to the warning, such meeting will be legal and valid. That provision of the statute, which makes it the duty of the clerk to warn a meeting of the district upon a written application to him for that purpose, was intended to act *compulsorily* upon the clerk, and not to withhold from him the power of calling meetings without such application.

But if it were essential, that such application in writing should have been made, the court would presume that it was made.

In computing the length of time, during which notice of a meeting of a school district was given, the same rule will be applied, as in the case of service of process;—either the day on which the notice was posted, or the day on which the meeting was held, will be counted.

Mason *v.* School District No. 14 in Brookfield.

In an action brought by a school teacher against a school district, to recover pay for having taught the district school, evidence, that a majority of the voters in the district were dissatisfied with the plaintiff, and that the plaintiff and the prudential committee, who employed the plaintiff, knew this at the time the plaintiff was employed, is inadmissible.

When a school district, at their annual meeting, have decided, that they will appoint but one prudential committee, and have appointed him, they cannot, at a subsequent meeting during the year, warned for that purpose, determine that the committee shall consist of three persons, and proceed to appoint two additional members of the committee. They cannot again act upon the subject, during the year, unless a vacancy shall have occurred by the *death, resignation,* removal, or disability, of the committee first appointed.

The power of employing and dismissing teachers in school districts is, by law, vested in the prudential committee; and the district have no power over the subject. A teacher, who has been employed by the prudential committee to teach the school, is entitled to all the benefit of the contract, unless he have relinquished it, or been guilty of some dereliction of duty, or failure to perform his part of the contract. The district have no power, by vote, to annul the contract.

Where a teacher contracted to instruct a district school during a specified time, and during the time he was absent two days at one time, *without the previous* consent of the prudential committee, and he closed the school a few days before the time agreed upon, and this, also, without the previous consent of the prudential committee, but it appeared, that he had sufficient reason, in both instances, for so doing, and that the prudential committee, when the cause was made known to him, was entirely satisfied, it was held, that the teacher was entitled to recover pay for the time during which he actually taught, at the same rate of compensation agreed upon for the entire time.

The court will not grant a writ of *mandamus,* requiring the clerk of a school district to amend his records, where it appears, that he has ceased to be clerk and has removed without the jurisdiction of the court.

INDEBITATUS ASSUMPSIT for labor, care and diligence of the plaintiff in instructing the defendants' school. Plea, the general issue, and trial by the court, December Term, 1846,—REDFIELD, J., presiding.

On trial it was proved, on the part of the plaintiff, that in the latter part of October or first of November, 1845, one Samuel W. Yorke, acting as prudential committee of the defendants, employed

Mason *v.* School District No. 14 in Brookfield.

the plaintiff to teach school in said district three months, at twelve dollars *per* month,—the plaintiff to commence at the usual time in December for commencing winter schools, and to teach twenty six days for a month, and nothing being said as to his board ;—that the plaintiff commenced the school at the time agreed upon ;—that he was absent two days at one time, without the consent of Yorke at the time, but for good reason, with which Yorke was satisfied, when informed thereof ;—and that, a few days before the expiration of the time agreed upon, the plaintiff, on account of the sickness of his family, closed the school,—Yorke being then absent upon a journey, but expressing himself satisfied, when informed by the plaintiff of the reason of closing the school ;—and the court found the fact to be, that the plaintiff had a reasonable excuse for so leaving the school.    It was farther proved, that the plaintiff had previously taught the school in the district at twelve dollars a month, and boarded himself, that he lived near the school house, and owned a farm and stock of cattle, of which he took the care himself, and that he boarded himself, while he taught the school under the contract with Yorke.

To prove that Yorke was the prudential committee of the district, the plaintiff offered in evidence the record of a warning of a meeting of the school district, dated October 20, 1845, and the record of the proceedings of a meeting, holden, in pursuance of that warning, October 27, 1845.    It did not appear upon the record, whether the application to the clerk, for the calling of the meeting, was in writing, or not.    The defendants objected to the admission of the record, upon the ground, that it should appear by it, that the appli_cation to the clerk to warn the meeting was in writing, and upon the ground, that the notice was not given such length of time, as the law requires, and offered to prove, that there was no written application.    The court rejected the evidence offered, and held, that it was to be presumed, that there was an application in writing, in pursuance of the statute, and received the record as evidence.    It appeared by the record, that Yorke was chosen prudential commit-tee of the district, and the plaintiff clerk, and that the district voted, that they would support the school upon the grand list, and that the board of the teacher should be according to the scholar,—all which proceedings were in pursuance of articles in the warning.

62

The defendants offered to prove, that when Yorke contracted with the plaintiff to teach the school, a majority of the voters in the district did not want the plaintiff to teach the school, and that Yorke and the plaintiff knew this;—that immediately after the contract was made, an application in writing, in pursuance of the statute, was made to the plaintiff, as clerk of the district, to warn a meeting, for the purpose of ascertaining, whether the district would have the plaintiff teach the school the next winter;—that the plaintiff fraudulently warned the meeting for November 15, giving only five days' notice, so that it might be illegal, and that the district met, but, for that reason, did not act;—that on the next day (November 16) one of the voters in the district called upon the plaintiff and informed him, that the law required, that he should warn a legal meeting within ten days after application was made to him, and that he must do it,—to which the plaintiff replied, that, if he was obliged to, he would,—otherwise not;—that the plaintiff did warn another meeting, to be held November 25th, but that neither Yorke nor the plaintiff attended, and no action was had by the district, for the reason that those who attended supposed, that the meeting must be opened by the clerk, or committee;—that there was no record of either of these meetings;—and that, while the plaintiff taught the school, for which this suit is brought, but a small minority of the scholars in the district attended the school. To all which testimony the plaintiff objected, and it was excluded by the court.

The defendants then gave in evidence the record of a warning of a meeting of the district, dated December 10, 1845, and the record of the proceedings of a meeting, held December 18, 1845, in pursuance of the warning, from which it appeared, that the district voted, that they were dissatisfied with the proceedings of the prudential committee,—that they elected Joseph D. Whitney and John Parker members of the prudential committee, in addition to the one chosen at the annual meeting,—and that they voted, that the school be discontinued;—and it appeared, that the plaintiff and Yorke had notice of these proceedings.    The defendants also gave in evidence the record of the warning and of the proceedings of a meeting, held February 12, 1846,—from which it appeared, that the district, in pursuance of an article in the warning, chose Joseph D. Whitney, John Parker and Samuel W. Yorke prudential committee.

The defendants then offered to prove, that, after each of the last mentioned meetings, the said Whitney and Parker, as committee, requested the plaintiff to discontinue teaching the school, and that they twice fastened the school house, and that the plaintiff broke in each time; to which testimony the plaintiff objected, and it was excluded by the court.

The court decided, that after the district had, at their annual meeting, elected Yorke as their prudential committee, they had no right to elect any more, until the expiration of the year, or until the next annual meeting, unless the office became vacant; and that therefore Whitney and Parker had no authority as prudential committee. Judgment was rendered for the plaintiff to recover at the rate of twelve dollars a month for all the time he taught the school. Exceptions by defendants.

After the case was entered in the supreme court, the defendants filed their petition, alleging that the plaintiff, Mason, had removed into the state of New Hampshire, and that one Colburn had been elected clerk of the district, and praying that a writ of *mandamus* might be issued, directing Mason, or Colburn, so to amend the record of the meeting of October 27, 1845, as to show whether any application was made to the clerk to warn that meeting, and, if so, in what manner it was made.

*Hunton & Jones*, for defendants, referred to Rev. St. 113, § 12; Ib. 115, § 26; 11 Vt. 619; 1 D. Ch. 103; Swift's Ev. 139; 7 Vt. 134; 8 Vt. 396; 2 Burr. 1073; 3 Stark. Ev. 1241.

*Hebard & Steele*, for plaintiff, cited *Waters v. Daines*, 4 Vt. 601; Rev. St. c. 18, §§ 11, 26; *Sherwin v. Bugbee*, 16 Vt. 439; *French v. Wilkins*, 17 Vt. 341; *Hunt v. Sch. Dist. No. 20 in Norwich*, 14 Vt. 300; *People v. Morrell*, 21 Wend. 563.

The opinion of the court was delivered by

KELLOGG, J. It has been urged in the argument, that the county court improperly admitted the record of the district meeting of the 27th of October, 1845, to prove the appointment of Yorke as committee for that year, by whom the plaintiff was hired as a teacher, inasmuch as it does not appear by the record, that any application

in writing for that meeting was made to the clerk, who warned the same. This objection, we think, is unsound. It appears by the papers before us, that it was the annual meeting of the district,—a meeting which the district is by law required to hold; and it may well be questioned, whether, for such a meeting, any application to the clerk in writing, or otherwise, to call the meeting, is necessary. But even if it were necessary, we think the county court were correct, in holding that the law would presume such application to have been made. We are however of the opinion, that no such application was necessary. The provision of the statute, which makes it the duty of the clerk to warn a meeting of the district, upon a written application to him for that purpose, was intended to act *compulsorily* upon the clerk, and not to withhold from him the power of calling meetings without such application. If, then, the meeting of the 27th of October were duly warned by the clerk without any application in writing, and upon his own mere suggestion, and a meeting were held pursuant to the warning, it would, in the judgment of the court, be a legal and valid meeting. Such being the view we entertain of the subject, it follows, that the county court properly rejected the evidence, offered to repel the presumption of their having been a written application made to the clerk to warn the meeting.

Equally untenable is the objection, that the meeting of the 27th of October was illegal for want of sufficient notice, and that consequently the record of that meeting should have been excluded. The notice for the meeting was made and posted on the 20th of October, and the time therein appointed for the meeting the 27th of the same month. This, we think, was sufficient. It is well settled, that, in computing time in the service of process, either the day of the service or the return day of the process is to be counted; and we see no reason, why the same rule should not be applied to a case like the present. Applying that rule, the notice will be found to have been all that the law requires. It is farther insisted, that the court erred in rejecting the evidence offered, to prove that a majority of the voters of the district were dissatisfied with the plaintiff, and that the plaintiff, and Yorke, the committee, knew it. This objection is based upon the supposition, that the dissatisfaction of a majority of the district, if known to the plaintiff and the committee at the time the

plaintiff was employed, would be sufficient to annul the contract made with the plaintiff. This we believe to be an erroneous view of the subject. The power of employing and dismissing teachers in school districts is, by law, vested in the prudential committee; and the district have no power or control over the subject. Nor can the committee dismiss a teacher, except for good and sufficient cause. And it is worthy of remark, that in the case at bar there was no offer to prove, nor even pretence made, that the plaintiff was either incompetent, or unfaithful. It was, simply, that a majority of the district were opposed to him. This evidence was irrelevant and was properly excluded.

It is also contended, that the court should have admitted the evidence offered, of the efforts made by Whitney and Parker to have the plaintiff discontinue the school. To determine whether the evidence thus offered was properly rejected, it becomes necessary to inquire, what authority those individuals had to interfere to discharge the plaintiff from his employment. Were Whitney and Parker legally appointed committee men, for the year succeeding the 27th of October, 1845? If not, they had no more authority to interfere in the matter, than any private individual of the district. The district, at their annual meeting, had the right to appoint one or three individuals for their prudential committee; and they made their election by appointing one only, Mr. Yorke. On the 18th of December, 1845, at a special meeting called for the purpose, the district appointed Whitney and Parker committee, *in addition* to the one which they appointed at the annual meeting in October previous. At this time no vacancy had occurred in the committee. Mr. Yorke was residing within the district, and in the discharge of the duties of his office. Under these circumstances we think the *appointment* of the additional committee was unauthorized by law, and consequently conferred no authority upon them. The district, at their annual meeting, having elected to appoint but one for committee for the ensuing year, their power over the subject became thereby exhausted, and they could not resume it, until a vacancy should occur by the death, resignation, or removal of Yorke, or some disability to perform the duties of the office. No such disability having occurred, the appointment of the additional committee was unauthorized, and consequently the evidence was properly rejected.

But it is said, that the plaintiff should not have been allowed to recover for services rendered after the 18th of December, inasmuch as the district on that day voted to have the school discontinued, and this was made known to the plaintiff. This objection is founded upon the supposition, that one of the contracting parties, without the consent of the other, and without any sufficient cause, could put an end to the contract and absolve themselves from farther liability,—a proposition, which, we think, cannot be sustained. If the plaintiff contracted with the proper officer of the district, who had competent authority so to contract, (all which manifestly appears in the case,) he is entitled to all the benefit of the contract, unless he have relinquished the same, or been guilty of some dereliction of duty, or failure to perform his part of the contract.

It is insisted, that the plaintiff ought not to be allowed to recover any thing on account of his failure to keep the school the entire period for which he contracted. The case finds, that he was absent from the school at one time two days, without the *previous* consent of the committee, but that the committee, when informed of his absence, was satisfied with it. This, surely, could not be such a failure to perform the contract, as would defeat the plaintiff's right of recovery. Nor should his closing the school a few days before the expiration of the time agreed upon by the parties defeat his right to recover, when taken in connection with the occasion, which compelled him to close it,—the sickness of his family, that required his immediate personal attention. When the cause was made known to Yorke, the committee, he was entirely satisfied, and the county court have found the fact, that he had a reasonable excuse for closing the school. The failure to serve the entire time of the contract, under such circumstances, would not deprive him of the right to recover for the time he actually served the district. This disposes of the several objections taken upon the trial of the case in the court below.

But the defendant has also filed his petition in this court, praying that a *mandamus* may be issued, requiring the plaintiff, who then was clerk of the district, to amend the district records, so that it may appear, what application was made to him, as clerk of the school district, to call the meeting of the 27th of October, 1845, and whether the same was in writing, or whether any application was

made to him. From the opinion which has been announced upon the several questions raised upon the trial of the case in the court below, it will be seen, that we regard it entirely immaterial, whether the record is amended in the manner sought by this application, or not,—as in neither event would it affect the legality of the district meeting. For this cause, therefore, the writ must be denied,—and also for the farther reason, that the plaintiff has ceased to be clerk of the district, and resides without the jurisdiction of this court.

The result is, that the judgment of the county court is affirmed, and the writ of *mandamus* denied.