BOODY & a. *v.* WATSON & a.

The public right of enforcing a tax-payer's obligation to contribute his share of public expense is created by a legislative division of the common burden in execution of the social contract, and not by a judicial assessment.

An ordinary tax assessment of a town is a judicial act of the selectmen, and they are not liable, in an action for damages, to a person injured by their exemption of taxable property in pursuance of an illegal vote of the town.

The exemption is an erroneous judgment of a court of assessment, and is reversible by the common-law power of general superintendence for correcting errors of courts of inferior jurisdiction where the laws have not expressly provided a remedy.

This power is affirmed by Gen. Laws, c. 208, s. 1; and the invention and use of judicial process and procedure necessary for its exercise are required by the common law and the statute.

The judicial ascertainment of a statutory share of public expense, and process for its collection, may be necessary for the exercise of the corrective power.

Correctional authority to reverse a tax-exemption that can be reversed only by a tax-assessment is authority to make the assessment, or cause it to be made.

The statutory authorization of certain writs, "and all other writs and processes," is a confirmation of the common-law power of issuing process that is necessary "for the furtherance of justice, and the due administration of the laws."

The question of form of action is not considered when time spent upon it would be wasted on a matter of no practical importance.

A petition or motion to bring an action forward, and reverse or modify a judgment rendered at the trial term of the supreme court, is an ample, simple, and convenient remedy; and for that reason, a writ of error does not lie in such a case. For a similar reason, a judgment of a lower court that is reversible here on a common-law writ may be reversed here on a petition.

The record of the lower court need not be brought up by a writ of error or *certiorari* for the correction of error by the common-law power of superintendence, but may be proved, and found with the other facts of the case, at the trial term.

A statement of the error, as the ground of complaint and cause of action, is required in the petition by the essential rules of common-law pleading, for the ascertainment of the precise point in controversy, and the production of distinct issues of law and fact; and on a sufficient peti-

tion, the question is whether there is an error, correctible by the superintending power, and not whether it is correctible on writ of error, writ of false judgment, *certiorari, mandamus, audita querela,* or prohibition.

A suit for an exercise of the superintending power can be brought by petition in a case for which no remedy is expressly provided by law, and for which no formal writ has been invented.

The power of an inferior court of tax-assessors to correct their erroneous judgment of exemption is not a common-law or statutory test of the correctional power of the supreme court.

An action for a reversal of the judgment, brought at the earliest possible term, is seasonably commenced.

In such an action, seasonably brought, the plaintiff is entitled to ample remedy after, as well as before, the expiration of the tax year during which the error could be voluntarily corrected by the lower court under Gen. Laws, c. 57, s. 10.

A continuance of the case by the supreme court for advisement is an act of the law that works no wrong.

The erroneous judgment, when reversed, is not left in force; it cannot be effectually reversed without an enforcible assessment of the wrongfully exempted property; and the law, authorizing a correction of the error, puts in requisition the means of correcting it.

One who can obtain a reversal of the judgment in a direct proceeding cannot impeach the original assessment collaterally on account of the error.

In the correction of judicial errors, the common law preserves so far as possible what is right, and destroys only what is wrong. This rule is applicable to errors in the assessment of taxes.

In legal process, addressed to the board of selectmen and their successors in their official capacity as a continuous court of assessment, they need not be personally named.

PETITION, against the selectmen of Northwood, for an order upon them to assess a tax, for a writ of *mandamus,* and for general relief. Reported 63 N. H. 320. After the case was decided at the June term. 1885, the question was raised whether the writ could be issued after the expiration of the tax year during which the selectmen were authorized to make a reassessment by the act of 1878 (G. L., c. 57, s. 10), which provides, "If the selectmen, before the expiration of the year for which a tax has been assessed, shall discover that the same has been taxed to a person not by law liable, they may, upon abatement of such tax and upon notice to the person liable for such tax. impose the same upon the person so liable. And, also, if it shall be found that any person or prop-

erty shall have escaped taxation, the selectmen, upon notice to the person, shall impose a tax upon the person or property so liable."

*Marston & Eastman*, for the plaintiffs.

*Bingham & Mitchell*, for the defendants.

Doe, C. J.   By express statute the shoe factory of the Pillsbury Brothers, located in Northwood, was taxable in that town in 1884. Gen. Laws, *cc.* 23, 54.   Under *s.* 10, of *c.* 53, it had been exempted by a vote of the town for the term of ten years, and that term had expired.   July 31, 18�45, it was decided in this case that the exemption law did not authorize the second vote of the town continuing the exemption for another term of ten years; that the second vote was void, and no defence to this suit; that the omission of the factory in the assessment of 1884 in pursuance of the illegal vote, was error, and a violation of the public right of taxation; and that the plaintiffs were entitled to judgment for a correction of the error.   *Boody* v. *Watson*, 63 N. H. 320.   They were entitled to relief in this suit when it was brought in 1884, and until April 1, 1885.   The merits of the case having been decided in their favor, the only remaining question is one of remedy.   The defence now is not a denial of the adjudicated violation of the plaintiffs' legal and equitable right, nor a defect of remedy when the suit was brought, nor a mistake in the alterable form of action, nor any delay in bringing or prosecuting the suit, nor any fault or laches of the plaintiffs at any time, but an alleged failure of remedy happening ten months after the suit was brought, while the court were forming the opinion that the plaintiffs were entitled to a reversal of the exemption.   The question whether their adjudicated right can now be vindicated by a judgment for the correction of the defendants' adjudicated error, or whether the remedy expired on the last day of March, 1885, brings into consideration the origin and nature of the right, and the distinction between the right and its remedy.

"All government of right originates from the people, is founded in consent.   .   .   .   When men enter into a state of society, they surrender up some of their natural rights to that society, in order to insure the protection of others.   .   .   .   All power residing originally in and being derived from the people, all the magistrates and officers of government are their substitutes and agents. .   .   .   Every member of the community has a right to be protected by it in the enjoyment of his life, liberty, and property. He is therefore bound to contribute his share in the expense of such protection."   Bill of Rights, Arts. 1, 3, 8, 12.   "The people inhabiting the territory formerly called the Province of New Hampshire do hereby solemnly and mutually agree with each other to form themselves into a free, sovereign, and independent

body politic, or state, by the name of The State of New Hampshire. The supreme legislative power within this state shall be vested in the senate and house of representatives." Const., Arts. 1, 2. In the exercise of authority given by the social contract thus made as the origin and organic law of the state (*State* v. *U. S. & C. Express Co.*, 60 N. H. 219, 253), the legislative agents of the community, determining by a general rule the shares of public expense which the owners of this factory and the owners of other property are bound to contribute, have decided what the law shall be. Other public agents decide what the tax law is, and what the facts are in a particular case, apply the law to the facts, and state the result in a tax assessment.

In determining what property was taxable and what was exempt, the defendants acted judicially; and they are not liable, in an action for damages, for errors in their decision. *Hayes* v. *Hanson*, 12 N. H. 284, 289; *Perkins* v. *Langmaid*, 34 N. H. 315, 326; *Edes* v. *Boardman*, 58 N. H. 580, 584, 585, 596: *Salisbury* v. *County*, 59 N. H. 359, 362; *Barnardiston* v. *Soame*, 6 St. Tr. 1063, 1096, 1097, 1119; *Colman* v. *Anderson*, 10 Mass. 105, 118, 119; *Weaver* v. *Devendorf*, 3 Denio 117; *Williams* v. *Weaver*, 75 N. Y. 30, 33—*S. C.*, 100 U. S. 547, 548; *Strusburgh* v. *Mayor*, 87 N. Y. 452, 455—15 Am. L. Rev. 502; Cool. Tax. (2d ed.), 786–795. In *Barhyte* v. *Shepherd*, 35 N. Y. 238, 250, 251, an action against assessors for assessing the plaintiff, and refusing to exempt him, the court say,—"The plaintiff is a resident of the town of Spencer, having in his occupancy a farm of 147 acres, and owning personal property. The assessors are not bound to know that there is any reason why this property should not be assessed with the other property of their town; or if there may be a right of exemption, they have no means of knowing that the plaintiff would desire to claim the benefit of it. He is therefore in the first instance properly chargeable on the assessment roll with the property owned by him. He may, and in the present case he did, appear before the assessors, and claim an exemption or a deduction on two grounds. First, he claimed an abatement from his personal property on the ground that he owed debts equal to its value, which by another provision of the law entitled him to such deduction. This fact he was bound to establish by oath, and subject to a cross-examination by the assessors, who, after hearing his evidence and deliberating upon it, would decide the question, and allow or disallow his claim as the truth should require. He also claimed a deduction on the ground that he was a minister of the gospel, and gave his own evidence on this point, and was cross-examined by the assessors. They disallowed his claim, holding, as I conclude upon the evidence he gave them, that the calling of a minister must be exclusive, and that his occupation as a farmer during the week days prevented him from claiming the benefit of the deduction allowed to a minister. In each and all of the cases

I have suggested under this statute, the action of the assessors is eminently judicial in its nature. To administer oaths, to hear evidence, to weigh its effect, to compare it with the law, and to decide the question presented, are of the essence of judicial action. To make the figures indicating a deduction, and to make the deduction itself, on the assessment roll, may be conceded to be a ministerial act; but to arrive at the conclusion, by hearing and weighing evidence, judging of its credibility, and comparing the evidence with the provisions of law, that the plaintiff was entitled to a deduction, is as far from a ministerial act as can well be imagined. The defendants had jurisdiction of the subject-matter of their proceeding, and of the person of the party interested."

The defendants' immunity "does not depend at all on the grade of the office, but exclusively upon the nature of the duty." Cooley Torts 381. "It is not necessary that a magistrate or board should act formally as a court, or that they should be usually so denominated or considered. If they are bound to notify and hear parties, and can only decide after weighing and considering such evidence and arguments as the parties choose to lay before them, their action is judicial." *Sanborn v. Fellows*, 22 N. H. 473, 488, 489. "The selectmen or assessors shall, on the first Monday of April in each year, give public notice of the times and places where they will be in session for the purpose . . . of hearing all parties in regard to their liability to taxation." G. L., c. 55, s. 6. In Kansas it has been held that an ascertainment of the value of property is an incident of the legislative power of taxation; that the legislature may assess a tax upon an appraisal made by themselves; that an appraisal made by a certain board of assessors could be annulled by legislative action; that, as the legislature cannot open a judicial decision and give a new trial, the assessors' appraisal was not such a decision; that the power of determining the value of property for the purpose of taxation, being legislative, cannot be judicial. *Auditor v. Railroad*, 6 Kan. 500. The valuation made by these defendants was judicial administration of a general statute of taxation; and being judicial, it was not legislative. Cool. Tax. 409, 410. "Where a tax is levied on property, not specifically, but according to its value to be ascertained by assessors appointed for that purpose upon such evidence as they may obtain, . . . the officers, in estimating the value, act judicially." *Hagar v. R. District*, 111 U. S. 701, 710. "The abatement of a tax by selectmen is a judicial act." *Melvin v. Weare*, 56 N. H. 436, 439. With some possible exceptions, not affecting this case, questions of abatement are questions of assessment. Judicially determined in this court on abatement appeals, they are judicially determined by the decisions appealed from. Though not entitled to jury trial (the case being one in which it "was otherwise used and practised" before the adoption of the constitution, *Cocheco Co. v. Strafford*, 51 N. H. 455, 458), persons

assessed have a constitutional right to be heard, in some stage of the proceedings, on the judicial questions of liability. Cool. Tax. (2d ed.) 47–53, 361–366; *Edes* v. *Boardman*, 58 N. H. 580, 585. In some cases the inconveniences resulting from assessors' holding an exercise of the legislative power of taxation to be void are evidence of a legislative intention that the execution of tax laws and tax votes should not be suspended by assessors. *Edes* v. *Boardman*, 58 N. H. 580, 595; *School-District* v. *Carr*, 63 N. H. 201. But such an intention does not alter the nature of a question of tax liability correctly or incorrectly decided by the court of assessment.

The validity of the town's vote exempting this factory for a second term of ten years was a judicial question depending on the legal construction of *s.* 10 of *c.* 53; and the defendants' construction was erroneous. The unauthorized vote did not empower them to release the factory from the share of public expense allotted to it by the legislature. Notwithstanding their unauthorized and voidable exemption of it, and their transfer of its statutory share to the plaintiffs and other tax-payers, its liability remained undischarged, as the liability of the owners of all the farms in the town would have remained if the assessment had exempted them, and put upon the factory the shares assigned by statute to the farms. The whole sum to be paid by the owners of taxable property, and the share to be paid by each, were fixed by legislative action (state and municipal) which the assessors could not annul. Many liabilities, created by statute or the common law, are ascertained on judicial inquiry, declared in judgments, and enforced by executions. A tax-payer's liability to contribute his share of the common burden, judicially ascertained by a court of special and limited jurisdiction, declared in a judgment called an assessment, and enforced by an execution called a warrant, is not created by the assessment. The Pillsburys' non-payment of their statutory share would be a compulsory payment of that share by their neighbors, and, in effect, a payment to the Pillsburys, for their private use, of their neighbors' money. The Pillsburys' payment of their own share was the plaintiffs' statutory and constitutional right. *State* v. *U. S. & C. Express Co.*, 60 N. H. 219, 251, 252. For the defendants' violation of this right there is no remedy in an action for damages. And available remedies, in an action at law for damages, on a bill in equity, and by indictment, would not have been a bar against the plaintiffs' petition for a *mandamus.* High Extr. Remedies, *ss.* 17, 18, 20, 35.

The plaintiffs' primary and substantive right is based, not on the defendants' duty of judicial assessment, or on their or our correctional duty, but on the legislative assignment to the factory of its share of a common expense incurred in the execution of the social contract. Before an action can be maintained by Northwood for the recovery of the share of the public expense due from

the Pillsburys as owners of the factory, the legislature have required the share and the payers of it to be judicially ascertained and recorded, either by the selectmen, or in some proceeding for the correction of the selectmen's error. But this ascertainment of the payers and the sum to be paid, like a jury's ascertainment of the payer and the sum to be paid in an action of assumpsit on a promise of contribution, is judicial procedure, and not the origin of contributory liability. An absolute obligation to pay money may be a debt before it is due, and before it is judicially assessed. Within the meaning of some statutes and some contracts taxes may not be debts either before or after assessment. *Lane County* v. *Oregon,* 7 Wall. 71; *Meriwether* v. *Garrett,* 102 U. S. 472, 513, 531; Cooley Tax. (2d ed.) 15. Within the meaning of other statutes and other contracts they may be debts before assessment as well as afterwards. Under statutes enacting that certain duties shall be levied, collected, and paid on imported goods, the duties are personal debts of the importers, recoverable by the government in common-law actions without previous assessment. *U. S.* v. *Lyman,* 1 Mason 482; *Meredith* v. *U. S.,* 13 Pet. 486, 493, 494. Five per cent. taxes laid by statute upon the undistributed earnings of savings-banks are debts recoverable by the government in common-law actions without previous assessment. *D. S. Bank* v. *U. S.,* 19 Wall. 227, 240. A debt due from the plaintiff to the defendant cannot be set off unless a right of action existed thereon at the commencement of the plaintiff's action. G. L., c. 227, s. 8. "A right of action," in this provision, was held by a majority of the court in *Hibbard* v. *Clark,* 56 N. H. 155, to mean a right to commence and maintain an action: and upon this construction, in an action against a town, a tax due to the defendant from the plaintiff could not be allowed in set-off if it could not be collected by suit. The statute making taxes collectible by suit, like other debts (Laws 1881, c. 28, *Dana* v. *Colby,* 63 N. H. 169, 171), has removed the ground on which *Hibbard* v. *Clark* was decided; and whether any other ground remains (Dill. Mun. Corp., ss. 576, 577, *Meriwether* v. *Garrett,* 102 U. S. 472, 501, 513, 518, 525, 526, *Gatling* v. *Commissioners,* 92 N. C. 536) is a question that need not now be considered. In whatever sense and for whatever purpose a tax, collectible by suit with or without previous assessment, is or is not a debt (Dill. Mun. Corp., ss. 815–817, Smith (N. H.) 522), the public right to the factory's constitutional and statutory share of public expense is not to be confounded with the incidental and remedial right of having that share judicially assessed by the selectmen, or by another court effectually reversing the selectmen's erroneous judgment of exemption.

For some errors of assessment, abatement is an appropriate relief; but it is not the only relief in all cases. The non-assessment of the factory cannot be corrected by an abatement of an excessive assessment of the plaintiffs. They were entitled to such

a process as would carry into effect the expressed will of the legislature that made the Pillsburys liable, as owners of the factory, for a proportional share of the common burden.    The plaintiffs were entitled to this, not by the act of 1878, *c.* 68 (G. L., *c.* 57, *s.* 10), which authorized the defendants and their successors to correct the defendants' error before the expiration of the tax year, but by the statutory division of public expense among the taxpayers of Northwood, including the Pillsburys and the plaintiffs. Under this division of burden there were obligations and rights. The Pillsburys' liability and the plaintiffs' correlative right, not being derived from the selectmen's judicial powers of assessment and correction, were not extinguished by the non-user of those powers.    The question of remedy is, whether the plaintiffs have lost all judicial means of maintaining their surviving legal right and enforcing the Pillsburys' surviving legal obligation.    The defendants' contention is, that if they had not been authorized to reverse their judgment, it could not have been reversed by this court, and there would have been no specific or adequate remedy for their violation of the statute and the constitution.

"In every well constituted government, the highest judicial authority must necessarily have a supervisory power over all inferior or subordinate tribunals."    *Strong's Case,* 20 Pick. 484, 495; *Att'y Gen.* v. *Boston,* 123 Mass. 460, 472; *Hall* v. *Selectmen,* 39 N. H. 511, 517.    "The necessity of a superintending power to revise the proceedings and correct the irregularities" of such tribunals "cannot be questioned."    *Lynde* v. *Noble,* 20 Johns. 80, 83; *Lawton* v. *Com'rs,* 2 Caines 179, 182.    From this necessity arises the common-law jurisdiction of general superintendence.    It is not a branch of chancery.    *Lane* v. *Morrill,* 51 N. H. 422, 423.    By the English common law, the court of king's bench has jurisdiction to "correct all and all manner of errors *in fait* and in law of all the judges and justices of the realm in their judgments, process and proceeding in courts of record," and not only "errors in judicial proceeding, but other errors and misdemeanors extra-judicial tending to the breach of the peace, or oppression of the subjects, or raising of faction, controversy, debate, or any other manner of misgovernment; so that no wrong or injury, either public or private, can be done, but that this shall be reformed or punished in one court or other by due course of law.    As if any person be committed to prison, this court upon motion ought to grant an *habeas corpus,* and upon return of the cause do justice and relieve the party wronged.    And this may be done though the party grieved hath no privilege in this court.    It granteth prohibitions to courts temporal and ecclesiastical, to keep them within their proper jurisdiction.    Also this court may bail any person for any offence whatsoever.    And if a freeman in city, burgh, or town corporate, be disfranchised, albeit he hath no privilege in this court, yet this court may relieve the party."    4 Inst. 71.    "The jurisdiction of

this court is very high and transcendent. It keeps all inferior jurisdictions within the bounds of their authority, and may either remove their proceeding to be determined here, or prohibit their progress below. It superintends all civil corporations in the kingdom. It commands magistrates and others to do what their duty requires, in every case where there is no other specific remedy." 3 Bl. Com. 42. "It is the peculiar business of the court of king's bench to superintend all inferior tribunals." 3 Bl. Com. 110. "The court of king's bench, having a superintendency over all inferior courts and magistrates, will oblige them to execute that justice which the party is entitled to, and which they are enjoined by law to do." Bac. Abr., Mandamus (D). "Wherever any new jurisdiction is erected, . . . they are subject to the inspections of this court by writ of error, or by *certiorari* and *mandamus.*" *Cardiffe-Bridge Case*, 1 Salk. 146—*S. C.*, 1 Ld. Raym. 580. "No court can be intended exempt from the superintendency of the king in this court of B. R. It is a consequence of every inferior jurisdiction of record that their proceedings be removable into this court to inspect the record, and see whether they keep themselves within the limits of their jurisdiction." *Groenwelt* v. *Burwell*, 1 Salk. 144. "The statute does not give authority to this court to grant a *certiorari*, but it is by the common law that this court will examine if other courts exceed their jurisdictions." *Groenvelt* v. *Burwell*, 1 Ld. Raym. 454, 469; *Cooke's Petition*, 15 Pick. 234, 236. Exceeding their jurisdiction is one of many errors that are subject to correction. Their illegal proceedings in a case and upon a question of which they have jurisdiction are reversible. On a writ of error the general question is not whether the bounds of jurisdiction have been passed, but whether there is error of law. "In cases of absolute necessity, as where the inferior court refuses to award execution, this court will grant a *certiorari* after judgment, for the sake of doing justice between the parties." Tidd's Practice (3d ed.) 331. Omission is as correctible as commission. *Ballou* v. *Smith*, 29 N. H. 530; *Johnson* v. *Randall*, 7 Mass. 340, 341; *Hill* v. *Goodwin*, 56 N. H. 441.

In the absence of statutory regulation in this country, the general judicial superintendence is vested by the common law in the highest court of general common-law jurisdiction. *Lawton* v. *Com'rs*, 2 Caines 179, 182; *Lynde* v. *Noble*, 20 Johns. 80, 82; *Le Roy* v. *Mayor*, 20 Johns. 430, 438; *Barrell* v. *Benjamin*, 15 Mass. 354, 357. By the New Hampshire judiciary act of 1699, s. 4, this court had "cognizance of all pleas and causes as well civil (not under the value of twenty pounds, except where title of land is concerned) as criminal, as fully and amply to all intents and purposes whatsoever, as the courts of king's bench, common pleas and exchequer within his majesty's kingdom of England have or ought to have;" and this jurisdiction has been continued to the present time, without any abridgement that affects the present case.

N. H. Laws, ed. 1771, *p.* 6, *s.* 4; Acts of 1771, 1776, 1791, 1813, 1816, 1829, 1832, 1855, 1874, 1876; *C. Railroad* v. *Farrington*, 26 N. H. 428, 437–442; *State* v. *Albee*, 61 N. H. 423, 426, 427. In 1842 the legislature affirmed the common-law supervision, declaring that this court has "the general superintendence of all courts of inferior jurisdiction, for the prevention and correction of errors and abuses, where the laws have not expressly provided a remedy," and "authority to issue writs of error, *certiorari*, *mandamus*, prohibition, . . . *quo warranto*, . . . *habeas corpus*, and all other writs and processes to courts of inferior jurisdiction, to corporations and individuals, for the furtherance of justice, and the due administration of the laws." Rev. Sts., *c.* 171, *ss.* 3, 4. The meaning of this reënactment of common law is not altered by its subsequent condensation. Gen. Sts., *c.* 189, *s.* 1; G. L., *c.* 208, *s.* 1; *Jewell* v. *Holderness*, 41 N. H. 161, 163. Fully affirming the general superintendence of lower courts, the legislature left the bounds of the jurisdiction to be determined by the reasons of natural justice and practical necessity on which it rests in the common law of this state. *Washburn* v. *Phillips*, 2 Met. 296, 298; *Cole* v. *Lake Co.*, 54 N. H. 242, 286. One object to be accomplished is the execution of the laws when they have not provided specific modes of preventing and correcting the errors and abuses of courts of inferior jurisdiction. *Mendon* v. *Co. Com'rs*, 2 Allen 463, 465; *C. R. R. Co.* v. *Co. Com'rs*, 127 Mass. 50, 58, 59. The illegal exemption of the Pillsburys' factory by one of those courts acting upon a judicial misconstruction of the exemption law is a typical case of error within the remedial purpose of our common law, and the letter and reason of the statute, and is correctible by the general power of judicial revision unless the wrong is made incurable by some exceptional and latent defect in the law of remedy.

However much the operation of the correctional principle may have been obstructed and narrowed, in other jurisdictions, by inadequacy of remedy, the plaintiffs' violated right of assessment does not encounter an impediment of that kind. The writs named in the statute are not restricted to the uses that have been made of them. They may be modified and adapted to the wants of particular cases, "on grounds of convenience and expediency." *Hayward* v. *Bath*, 35 N. H. 514, 524. By a principle of our common law, for ascertaining, establishing, and vindicating legal rights, such procedure is to be invented and used as justice and convenience require. *Walker* v. *Walker*, 63 N. H. 321; *Brooks* v. *Howison*, 63 N. H. 382; *Owen* v. *Weston*, 63 N. H. 599. "The court may . . . prescribe forms of proceedings in all cases not provided for." G. L., *c.* 208, *s.* 6. The statutory authorization of certain writs "and all other writs and processes," is a confirmation of the common-law power of issuing whatever process is necessary "for the furtherance of justice, and the due administration of the laws."

Until a change is made in the established common-law procedure of this state, "all other writs and processes" will include the best that can be invented. It being settled that the plaintiffs were entitled, in this suit, in 1884, and in the first three months of 1885, to an enforcement of the Pillsburys' liability by a correction of the defendants' judicial error, a demonstration or decision that a writ of *mandamus*, limited by precedent, is not the remedy, would merely show the duty of issuing some other writ, or a *mandamus* not limited by precedent, or adopting some other mode of defending a right that is as easily maintained as if such forms of action as *mandamus*, *certiorari*, and writ of error had not been devised. *Ela* v. *Goss*, 20 N. H. 52, 53; *Ela* v. *Goss*, 20 N. H. 53, 55–57.

Every writ issuing out of the office of the clerk of this court is a written command given in the name of and by the state, requiring some act to be done or omitted by the person to whom it is addressed. Const., Art. 87. A writ containing an order to enforce the Pillsburys' liability by assessment is an appropriate remedy in this case, and it is not material whether the words "of *mandamus*" are used or omitted in the petition, judgment, and final process. Neither is it necessary to inquire whether any command that can be issued is a common-law or a statutory *mandamus*, or one of the "other writs" authorized but not named by the statute. The efficacy of process does not depend upon the record's giving it a technical name in a dead or living language. There is no law for turning the plaintiffs out of court on a question of terminology.

The distinction between substantive rights and their common-law remedies recovered its original importance when rights were liberated from the oppressive yoke of remedial form, which materially confounded the distinction, and inculcated false ideas of law. The question of form of action is not considered when it is of no practical consequence and time spent upon it would be wasted. *Peaslee* v. *Dudley*, 63 N. H. 220. No statute of this state forbids the correction of errors of lower courts by writ of *certiorari* or writ of *mandamus* in causes which proceed according to the course of the common law, or by writ of error in those which proceed otherwise. No statute of this state provides that the selection of a common-law writ for this work shall be governed by the rank of the tribunal in whose proceedings error is alleged, or by the technical test of its being a court of record; that an actual or imaginary removal of a record or case from the lower court to the higher is necessary on error and *certiorari*, and not necessary on *mandamus*; that a good judgment on the merits can be rendered in place of a bad one when the latter is reversed on error, and not when the proceedings are quashed on *certiorari*; that the power of one court to correct an error of another depends upon the correctional power or the continued existence of the latter when the form of action is called writ of *mandamus*, but not when it is called writ of error, or writ of *certiorari*; or that either

of these writs is necessary in any case of correction by the common-law power of superintendence. In this case such technicalities are useless, and no time is to be wasted upon the inconvenient peculiarities of writs that cannot suppress or derange the best inventible procedure. A petition or motion to bring an action forward, and reverse or modify a judgment rendered at the trial term of this court, is an ample, simple, and convenient remedy; and for that reason a writ of error does not lie. *Abbot* v. *Renaud,* 64 N. H. 89. For a similar reason, a judgment of a lower court that is reversible here on a common-law writ may be reversed here on a petition. "In any case brought in any court, process may be served and notice given by duly attested copy." Laws of 1883, *c.* 22. Cumbersome machinery for bringing up the record of the lower court is unnecessary. *Ableman* v. *Booth,* 21 How. 506, 511, 512, 514, 522, 526. The record can be proved, and found with the other facts of the case, at the trial term, on a petition, as well as in an action of debt, or a writ of entry. *Ela* v. *Goss,* 20 N. H. 52. A statement of the error, as the ground of complaint and cause of action, is required in the petition by the essential rules of common-law pleading, for the ascertainment of the precise point in controversy, and the production of distinct issues of law and fact. On a sufficient petition, the question is whether there is an error correctible by the superintending power, and not whether it was committed by a court of record, or whether it is correctible on writ of error, writ of false judgment, *certiorari, mandamus, audita querela,* or prohibition. The judgment, rendered on the issues presented by the petition and other pleading, is the conclusive paper; and whether any writ that may be needed for its enforcement is called a mandate, *mandamus,* or other appropriate name descriptive of final process, is not material.

The plaintiffs' petition, setting forth the facts that entitled them to the specific remedy of an assessment of the factory, concludes with a prayer for an order upon the defendants to make the assessment, for a writ of *mandamus,* and for general relief. A *mandamus* was properly asked. Upon the narrowest precedents and the most technical definitions, it was the plaintiffs' remedy when they filed their petition, June 3, 1884, and during the subsequent months of that year, and the first three months of the next year. In March, 1885, the writ could have been issued to the defendants' successors without a prayer to that effect, and without an amendment of the petition joining them as defendants (*School-District* v. *Carr,* 63 N. H. 201, 206); and an amendment was no more necessary in April than in March. The prayer for special and general relief was a sufficient call for a correction of the error by any necessary exercise of the superintending power at the December term, 1884, or afterwards.

When a person assessed as a tax-payer of a school-district seeks an abatement, claiming that he has been set off to another district,

his claim may be more properly tried in a suit brought by him in which he will be bound by the judgment, than on a petition prosecuted for his benefit by the former district. *School-District* v. *Selectmen*, 63 N. H. 277. The questions whether this suit should have been brought in the name of the state or the attorney-general (*Hill* v. *Goodwin*, 56 N. H. 441, 453, *Ballou* v. *Smith*, 29 N. H. 530, *Clark* v. *Nichols*, 52 N. H. 298, *U. P. R. Co.* v. *Hall*, 91 U. S. 343, 354, *Pumphrey* v. *Mayor*, 47 Md. 145, *People* v. *Halsey*, 37 N. Y. 344, 347, *Wellington's Petition*, 16 Pick. 87, 105, *Harrington* v. *Com'rs*, 22 Pick. 263, *Dodge* v. *Com'rs*, 3 Met. 380, *Pearsons* v. *Ranlett*, 110 Mass. 118, 126, *Gilman* v. *Bassett*, 33 Conn. 298, 305, *Lyon* v. *Rice*, 41 Conn. 245, 250, *Railroad* v. *Chatham*, 42 Conn. 465, High Extr. Remedies, ss. 430–439); whether the Pillsburys, being defendants in interest, should have had notice (*Rex* v. *Baker*, 3 Burr. 1265, 1269, *Com.* v. *Peters*, 3 Mass. 229, *Kent* v. *Com'rs*, 10 Pick. 521, *W. & N. Railroad* v. *R. Com'rs*, 118 Mass. 561, 563, 564); whether they should have been joined as defendants, or been made sole defendants (High Extr. Remedies, ss. 440–447); and whether the petition could have been joined with an appeal for an abatement,—have not been raised by either party. If an objection on the ground of a want of proper parties had been seasonably presented, and been found to be valid, it could have been obviated by amendment. *Hill* v. *Goodwin*, 56 N. H 441, 453; *Owen* v. *Weston*, 63 N. H. 599, 604. The defendants in interest have not made an objection which would not help them if it were sustained. The case has not been opened for the discussion of any point which they could have raised when the suit was brought, and which they did not seasonably present before the reported decision was made. The question whether the present board of selectmen should be made defendants is the only question of proper parties that could be raised upon anything that has happened since the suit was brought; and that question was settled in *School-District* v. *Carr*, 63 N. H. 201, 206.

The amount in controversy is not too small for the constitutional jurisdiction of this court. On appeal we try personal common-law actions in which the legal right involved, as well as the amount of damages demanded, or the value or property claimed, is nominal; and for such suits our jurisdiction may be made original, as it is in real actions of equal insignificance. *Stevens* v. *Chase*, 61 N. H. 340. The maxim that the law does not concern itself about trifles is not a bar to an action brought, as this was, for the vindication of a violated legal right. No objection having been made to the institution and prosecution, in the plaintiffs' names, of the action for the maintenance of the public right, the petition stands as well as if the objection had been made and had been obviated by an amendment making the state plaintiff of record. *Hill* v. *Goodwin*, 56 N. H. 441, 453. The public right asserted in the petition, and adjudicated in the former and the present decision, is not a trifle

in fact or in contemplation of law. The question whether the wrongfully exempted property should be appraised at $40,000 or $40,004 would be one which the law would not require the parties to settle by protracted and expensive litigation. *Manchester Mills* v. *Manchester*, 58 N. H. 38, 39. But the questions whether the exemption in the court below was illegal, and whether a legal exemption was effected by the continuance of the case for consideration in this court, are not of a trivial character; and the public right in controversy includes a substantial sum of money. If there were a discretionary power to render judgment against the plaintiffs, it would not be exercised in favor of the substantial inequality of illegal taxation resulting from a substantial and illegal exemption effected in this court in a mode that would cast undeserved reproach on the law.

The constitution does not provide that judicial duties of tax assessment shall not be imposed upon the highest judicial tribunal. On appeal, for relief by abatement, all questions of assessment can be brought hither from the municipal and state boards. G. L., c. 57, s. 12; c. 61, s. 9; *Edes* v. *Boardman*, 58 N. H. 580, 584, 596. "There is a uniformity of procedure conducive and perhaps necessary to the operation of the principle of equality. On appeals from municipal and state assessors the facts are found; upon the facts the law is decided and reported; the assessments are equalized by a uniform rule; and the tax-payer, the legislature, and the public have convenient means of knowing what are the decisions of the separated questions of law and fact, and what defects call for alterations of the law. Under this system of procedure we have both parties,—the tax-payer and the tax-payee,—availing themselves of the right to be heard, and the result is a thorough public investigation of all questions of law and fact." *B. C. & M. Railroad* v. *State*, 60 N. H. 87, 94, 95. "The questions of liability and amount are questions of indebtedness, and are of a judicial nature. The decision of those questions, upon existing law, with or without notice, is essentially an exercise of a judicial faculty. And when they are decided after notice and an opportunity for both parties to be heard, and with a power of carrying the decision into execution, the proceeding is not constitutionally excluded from the judicial jurisdiction." *Edes* v. *Boardman*, 58 N. H. 580, 585.

In one class of tax cases our jurisdiction of the questions of liability and amount has been original. From 1843 to 1878 the statute required the railroad tax to be assessed by the justices of this court. Rev. St., c. 39, s. 4; Laws of 1843, c. 34, ss. 3, 4; G. S., c. 57, ss. 1–6. The obligatory force of this law has not been an open question since the judicial character of the assessment has been fully admitted. It was decided in 1866 that the wood and lumber of a railroad company kept for immediate use on their road could not be taxed by selectmen because it was a part of the railroad property assessed by this court. "In determining the

value (of the capital stock), the entire railroad including the fran-
chise, the track, land, buildings, and fixtures, and also the rolling-
stock, tools, and whatever is necessary to the complete equipment
of the road, should be taken into the estimate; and among them
must be included, we think, the fuel and timber provided for im-
mediate use . . . Such wood and timber must enter into, and
be included in, the value of the stock, and must, therefore, in that
form, be taxed as part of the railroad. Such is the settled practice
of the justices of this court in assessing the railroads. . . . The
wood and lumber provided by railroads for present use are already
taxed as part of the railroads, and if properly so taxed it must be
decisive of the question before us. Upon the point whether these
materials are properly so taxed, the long and settled practice of
the court might well be considered as conclusive." *F. Railroad* v.
*Prescott*, 47 N. H. 62, 67. Whatever doubt or opinion may have
been entertained by any or all of the judges before the judicial
nature of the work was seen and acknowledged, the record shows
that for at least eighteen years—the latter half of the period dur-
ing which the railroad tax was assessed by us and our predeces-
sors—the assessors understood they were acting in the official
capacity of justices of this court. But the constitutionality of a
judicial correction of a judicial error of tax assessment need not be
supported by the authority of precedent until some argument is
advanced against it upon legal principle. Whether our jurisdic-
tion of cases of judicial assessment shall be original, appellate, or
superintending, is a legislative question. If the objection that no
power can be conveyed by the old writ of *mandamus* were not met
by the plenitude of new and adequate process, and could not be
otherwise answered or obviated, a superintending power of correc-
tive assessment that could not be conveyed would necessarily be
exercised without conveyance.

Under an Iowa statute empowering the court to direct that an
act commanded by a writ of *mandamus* should be done by the
plaintiff or some other person appointed by the court, the federal
court ordered its marshal to satisfy a judgment that had been ren-
dered against a county out of a county tax to be by him assessed
and collected. *Supervisors* v. *Rogers*, 7 Wall. 175. Broader power
is given by our statute in suits for the reversal of illegal exemp-
tions, and the correction of other errors of inferior courts. All
process necessary for the " general superintendence," " the furth-
erance of justice, and the due administration of the laws," is
authorized in comprehensive terms, with no express limitation of
form, substance, time, or method: no other limitations can be
implied than those of common-law remedies: and in the common
law of this state there is no remedial restriction that can cut off
the public right of taxation asserted by the plaintiffs in this case.
In *Supervisors* v. *Rogers* the power of assessment and collection
could not have been exercised by the marshal without the order of

court.   The same power can be exercised under the order of a court having "general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses" by the best process that can be invented.   If the best inventible procedure were insufficient, the difficulty could not be overcome by further legislation, or by any human effort.

Whether a grant be contractual, testamentary, statutory, or common law, it conveys the rights and powers without which it would be of no effect, or the means reasonably necessary for the enjoyment of the granted property or right, the exercise of the granted power, and the accomplishment of the object of the grant. *Burke* v. *Concord Railroad*, 61 N. H. 160, 233, 237, 244.   There is authority to do whatever is necessary to be done to accomplish the purpose of the superintendence of lower courts "for the prevention and correction of errors and abuses where the laws have not expressly provided a remedy."   The duty of correction being imposed by law, everything requisite to attain the end is implied. *Foliamb's Case*, 5 Co. 115 ; 1 Kent Com. 464 ; Broom L. M. 366 ; Sedg. Const. Stat. (2d ed.) 74 ; Dwar. Stat. (Potter's ed.) 123 ; Cool. Const. Lim. 63 ; Sto. Const., *s.* 430 ; 2 Inst. 306 ; 12 Rep. 130, 131 ; *Stief* v. *Hart*, 1 N. Y. 20, 28, 30.   The revisory jurisdiction is a branch of governmental power, and not a department of advice.   Its writs and other instruments of revision did not create it and do not control it.   It is not bounded by the precedents of *mandamus*, and is not restricted by the inability of that writ, operating according to precedent, to confer power upon those to whom it is addressed.   An assessment is authorized by the law that imposes upon this court the duty of causing the error of exemption to be corrected.   A grant of a way of necessity is implied by the rule that whoever grants a thing is understood also to grant that without which the grant itself would be of no effect.   Wash. Ease. 31.   By the same common-law principle the sheriff, in the execution of a writ, is armed with the power of the county.   *Miller* v. *Knox*, 4 Bing. N. C. 574, 582, 583.   Municipal capacity to contract debts, or execute public works, includes an implied power to assess and collect taxes ; and their assessment and collection may be enforced by judicial process.   *U. S.* v. *New Orleans*, 98 U. S. 381 ; Dill. Mun. Corp., *s.* 741.   When a statute delegating the imposition of local taxes is silent respecting the method of collecting them, authority to collect by suit is implied from the necessity of procedure for exercising the power expressly granted.   Dill. Mun. Corp., *s.* 818.   By fair implication, the union of courts of law and chancery prescribes whatever new proceedings are needed to give due effect to the union.   *Metcalf* v. *Gilmore*, 59 N. H. 417, 433.   When the law commands a thing to be done, it puts in requisition the means of executing its command.   From tribunals charged with the correction of judicial errors, indispensable process is not withheld.   Correctional authority to reverse a tax exemption

that can be reversed only by a tax assessment, is authority to make the assessment or cause it to be made.

The Pillsburys were entitled, in the court below, to an assessment subject to the superintending correction of illegal exemptions. The exemption was illegal; and under a superintending judgment for its reversal, for an assessment of a tax on their wrongfully exempted property at its value on the first day of April, 1884, and at the rate of that year, and for the collection of the tax by suit or otherwise, they will contribute that property's share of the common burden of that year, in exact compliance with the twelfth and twenty-eighth articles of the bill of rights, and every constitutional, statutory, and common-law provision relating to the subject. The assessment which the law commands to be now made by an exercise of the correctional jurisdiction of this court will follow the law's prescribed course as rigorously as if it had been correctly made in the lower court of original jurisdiction without the intervention of the superintending power. If the court below had not erred, the assessing judgment would have been rendered in strict compliance with the statute establishing the duty of that court. It will now be rendered in strict compliance with the statute of superintendence establishing the correctional duty of this court. The fact that the legislature have seen fit to lay down the duties of the two courts in different chapters does not authorize this court to refrain from that strict compliance with the law which the plaintiffs ask, and which the defendants in interest are endeavoring to prevent.

The statute dividing public expense, assigning to this factory its due share, and imposing upon the selectmen the judicial duty of assessment, and the duty of issuing process or instituting suit for collection, is all the exercise of the legislative power of taxation that is needed in this case. The selectmen's exemption of the factory was a judicial error of the same legal character as their exemption of all the property and all the persons they were bound to assess. The duty of correcting such an error, imposed by the common law upon this court when it was established in the seventeenth century, has not been annulled. If there has been a time when this court or the king's bench would have refused to correct such an error on the ground that the lower court could not correct it, the misrule would have been an instance of judicial legislation nullifying the common-law principle which provides the remedial procedure required by justice and convenience for the ascertainment and vindication of legal rights. We are not intrusted with the power of infringing substantive rights by withholding the necessary incident and appurtenant right of complete remedy: the common-law duty of inventing necessary forms of action, pleading, trial, judgment, and initial, intermediate, and final process, is as imperative now as it was during the ages in which its performance produced all the common-law procedure that is obsolete, and all

that is now in use: the precedent to be followed is the performance of this duty, and not a violation of it.   *Davis* v. *Bradford*, 58 N. H. 476, 480; *Metcalf* v. *Gilmore*, 59 N. H. 417, 433, 434, 435; *Rutherford* v. *Whitcher*, 60 N. H. 110, 112; *Burke* v. *Concord Railroad*, 61 N. H. 160, 241, 242; *Fletcher* v. *Chamberlin*, 61 N. H. 438, 496; *Peaslee* v. *Dudley*, 63 N. H. 220; *Walker* v. *Walker*, 63 N. H. 321, 326; *Brooks* v. *Howison*, 63 N. H. 382; *Owen* v. *Weston*, 63 N. H. 599, 600; *Joyce* v. *O'Neal*, 64 N. H. 91.   Without overruling this doctrine, a judgment that would leave the exemption in force cannot be rendered against the adjudicated right of the plaintiffs; and the settled doctrine cannot be overruled without holding that all the common-law remedies and procedures of a thousand years are judicial usurpations of law-making power.

The alleged want of reversing power in this court is an alleged infirmity of a writ of *mandamus*.   We need not inquire whether there are jurisdictions in which an exempting violation of statute is upheld by the defect of ancient process now brought to the defence of this wrong.   When New Hampshire law of person, property, and equal taxation is arranged under such heads as *assumpsit*, *mandamus*, and other insufficient forms of action, the inverted classification does not subject supreme rights to the domination of servient and incompetent remedies of judicial origin.   The statute provides for the correction of the error of the lower court.   The present position of the defendants in interest is that the error of the nominal defendants cannot be corrected because *mandamus* does not convey corrective power.   This is in effect a claim that the court should disobey the law because among the writs constructed by them and their predecessors there is none adapted to this case.   It is, at most, an overruled objection to the introduction of a new form of action.   *Walker* v. *Walker*, 63 N. H. 321. If such objections had prevailed in former times, there would have been no common-law procedure.   But no new form of action is necessary.   A suit for an exercise of the superintending power can be brought by petition in a case "for which no remedy exists by any formal writ. and for which it may be said that no express remedy is provided by law."   *Ela* v. *Goss*, 20 N. H. 52, 53; *Ela* v. *Goss*, 20 N. H. 53, 55, 56.   Such was the law in 1849; and since that time there has been no enactment of the proposition that judges can curtail legal rights by framing inadequate remedies for them.   In behalf of a tax-payer endeavoring to throw upon others his share of the common burden, the law was formerly perverted by strained and quibbling interpretation, a strict observance of frivolous formality, and a disregard of substance and principle. Since the discontinuance of that judicial usurpation in this state, tax cases have been no exception to the rule that the correctional duty is not suspended by the judicial invention of defective process.   Cases in which the only question was whether there was error are not authorities on the question of corrective power.   To

refuse to reverse this illegal exemption would be an exercise of a power of sacrificing legal rights to remedial infirmities invented by a court. This arbitrary and aggressive power, capable of nothing but wrong, is the one that does not exist.

An error of a lower court, not correctible where it occurred, might not be within some peculiar superintending jurisdiction derived from, or dependent upon, the corrective power of the lower court. But it is not the general rule that the superior jurisdiction is derived from, or depends upon, the inferior; or that the power of the latter to correct its errors is a test of their curability. When the superintending court, reversing a judgment of the lower, proceeds to render not such a judgment as the latter can give at the time of reversal, but such as ought to have been given, and to try the case if a new trial is necessary to ascertain what the judgment should be (*Hillsborough* v. *Deering,* 4 N. H. 86, 96, *Holman* v. *Kingsbury,* 4 N. H. 104, 106, *Davies* v. *Pierce,* 2 T. R. 125), the reversing power and continued existence of the lower court are not essential to the correction of its error. The corrective power of superintendence depends on no irrelevant conditions of that kind. In many cases this power is sufficiently exercised by reversing or quashing illegal proceedings, because new proceedings may be instituted. The court of general superintendence is not always required to do everything that should have been done in the lower court. In the present case, an assessment of the factory is as necessary as a new trial and a new judgment can ever be when a judgment is reversed. The ample remedy to which the plaintiffs are as much entitled now as when they brought this suit, is not an inoperative reversal of the exemption that will leave it in full force. Anything less than an enforcible assessment will fail to answer the purpose for which the law has established the court for the correction of errors. Without such an assessment, there would be no practical difference between a reversal of the exemption and an affirmance of it.

The exemption of the factory could have been reversed here March 31, 1885, not because the court had invented a writ of *mandamus* for the work of that day, but because the exemption was illegal, and at the common law affirmed by statute, the illegal exemption was an error of a court of inferior jurisdiction reversible in the court of correction. Why could not the exemption be reversed in the same court the next day? The only answer that has been suggested is, that it could not then be reversed by the voluntary action of the court below, and a writ of *mandamus* had been contrived, which would compel them to exercise their reversing power on the last day of March, but would not convey a reversing power to them the next day. The alleged inadequacy of *mandamus* for the business of April 1, does not exclude the use of adequate process. If the statute, which affirms the common-law power of superintendence, had named a writ of error as the only

writ to be used in the correction of error, the exemption of the
factory could have been reversed, on such a writ, on the last day
of March, 1885, or the next day, or at this term.   Using that writ,
the court could render the judgment of assessment that ought
to have been rendered in the court below; and, instead of being
restricted to the use of one writ, the corrective power is left free
to use any convenient, appropriate, and adequate process that has
been or can be invented.   The superintending power of reversal
existed in April, and there was no more difficulty in devising a
method of exercising it than in drawing a reversing *mandamus* in
the previous month.   The statute is that the supreme court shall
" have general superintendence of all courts of inferior jurisdiction
to prevent and correct errors and abuses."   G. L., *c.* 208, *s.* 1.
The legislature could have added this proviso : " But no error of
a court of inferior jurisdiction shall be corrected by the superin-
tending power unless the inferior court is in existence, and can
make the correction without the intervention of that power, when
the supreme court, after necessary hearing, investigation, and delib-
eration, are ready to render a correctional judgment."   This exten-
sive repeal of common-law remedies would have deprived many
common-law, statutory, and constitutional rights of needed protec-
tion.   Had the legislature inserted such a proviso, questions would
have arisen that need not be considered under the statute in its
present form.   Under such a proviso, a plea in bar of the further
maintenance of an action for an exercise of the superintending
power, alleging that since the commencement of the suit the court
below had been abolished, or had become unable to make a volun-
tary correction of its error, would stand on ground that does not
now exist.   Under the statute as it is, such a plea in this case
would give a superfluous reason for the further maintenance of the
action.

When an erroneous public or corporate record, or official paper,
is amended by order of this court on motion, it is not material
whether the officer who committed the error has power to correct
it voluntarily, or whether he is in or out of office.   " The right to
have the amendment made cannot depend upon the question
whether the officer has again been elected."   *Gibson* v. *Bailey*, 9
N. H. 168, 176.   The court decides what the error is, and what
amendment will be true.   The order sets out in terms the precise
alteration to be made.   The officer, acting as scrivener without
responsibility, decides nothing, and discharges no duty but obedi-
ence.   Such amendments are made by the corrective power of
superior courts of general jurisdiction.   *Pierce* v. *Richardson*, 37
N. H. 306, 311; *Flanders* v. *Atkinson*, 18 N. H. 167.   "Unless
some statute confers upon them the authority, it is not very
clear," says Judge Cooley, " whence they derive it, nor how a
township officer, or one who has been such, can in this collateral
way have authority conferred upon him to do anything which,

without such authorization, would be an illegal act." Taxation (2d ed.) 320. Our common-law principle of the inviolability of legal right requires specific and adequate remedies, and convenient procedure. The correction of errors on motion, in this class of cases, illustrates the breadth of the principle. The legal right and its specific remedy depend no more upon the life of the officer than upon his reëlection. In this state, his successor may be employed as scrivener. The amendatory relief, whether sought by motion or *mandamus*, is given on the same legal ground, and by the same authority. The clerical service of the writer or signer of an erroneous record or contract is not necessary for its judicial correction. In a suit for the reformation of a deed of New Hampshire land, the defendant would not deprive the plaintiff of his specific remedy by eluding final process, or submitting to imprisonment for contempt. If this factory had been wrongfully omitted in a conveyance made by the Pillsburys to the plaintiffs, it could be inserted by an amendment without new signatures of the grantors. The alteration of the deed, like an alteration of a highway, could be established by a judgment.

The act of 1878 neither gave nor took away the plaintiffs' constitutional and statutory right of equal taxation, or their remedy in this action. Neither in terms, nor by implication, did it introduce a ground for holding that their right was not violated by the exemption; that the exemption was not reversible in this suit; that a judgment of reversal became impossible during the pendency of the suit in which they were entitled to it; or that this court is disabled to issue process for the execution of a judgment which it has power to render. If it is an enabling act, it extends to the end of the tax year, the time in which the selectmen, of their own motion, can correct certain errors by amendment. *Harwood* v. *N. Brookfield*, 130 Mass. 561, 564; *Noyes* v. *Hale*, 137 Mass. 266, 271. If it is a statute of limitation merely, it restricts their time of voluntary action. Whichever it is, the time it prescribes for their corrective procedure may be claimed to be a measure of the reasonable time within which an aggrieved party should seek the ancient remedy attainable in the common-law and statutory jurisdiction of general superintendence. But no reasonable construction can raise an implied bar against the latter remedy in a suit seasonably brought. Had the legislature intended to introduce, in bar of the further maintenance of such a suit, a lapse of the lower court's power of voluntary amendment, the statute would have contained some allusion to such an unprecedented and anomalous limitation. *Evans* v. *Cleveland*, 72 N. Y. 486.

In the law requiring this factory and all other property taxable in Northwood to be assessed before the first day of July, the limitation of time is directory. *Scammon* v. *Scammon*, 28 N. H. 419, 431; *Orford* v. *Benton*, 36 N. H. 395, 403. If the defendants had not made the assessment before the expiration of the limited time,

they or their successors could have made it, and by *mandamus* could have been compelled to make it, afterwards. *School-District* v. *Greenfield*, 64 N. H. 84, 85; *School-District* v. *Carr*, 63 N. H. 201, 206; *Williams* v. *School District*, 21 Pick. 75, 82; Cooley Tax. (2d ed.) 280–290. " In the case of *Rex* v. *Sparrow*, 2 Strange 1123, the justices had been guilty of a neglect in not appointing overseers" of the poor "within due time : and this court issued a *mandamus* to compel them to do it afterwards, for the sake of the poor. The poor could not have had a specific remedy in that case unless the justices might do it after the precise time, in obedience to the *mandamus*." *Rex* v. *Loxdale*, 1 Burr. 445, 447. If there are reasons for holding that while the limitation of the time of assessing all property in *s.* 6 of *c.* 57, Gen. Laws, is directory, the limitation of the time of assessing omitted property in *s.* 10, of the same chapter, is mandatory, there is no reason for construing the latter to be a bar against the further maintenance of this action. In *State* v. *Gibbs*, 13 Fla. 55, a board of canvassers was abolished, and no provision was made for pending proceedings, or duties left unperformed. In this state, there would be a question of construction upon the retrospective effect of such legislation. In *Com.* v. *Com'rs*, 6 Pick. 501, 508, a board of commissioners was abolished, another was established, and duties were transferred from the former to the latter. The court say,—" There is no such thing as a vested right to a particular remedy. The legislature may always alter the form of administering right and justice, and may transfer jurisdiction from one tribunal to another. If there is a vested right, it is not invaded, . . . for the new statute makes sufficient provision for all cases under the former statute." In such a case, in our practice, the new board could be made defendants by amendment. In *Miller's Case*, 1 W. Bl. 451, the repeal was the act of a body that possessed an unlimited power of retrospectively abolishing remedies and rights. The New Hampshire act of 1878 abolished neither the right of equal taxation, nor any superintending remedy for its violation. If that act had not been passed, there would have been a question whether the illegality of the assessment of 1884 could have been obviated by the defendants or their successors voluntarily making a new assessment before or after April 1, 1885. *Pond* v. *Negus*, 3 Mass. 230; *Libby* v. *Burnham*, 15 Mass. 144, 148; *Bangor* v. *Lancey*, 21 Me. 472; *Himmelmann* v. *Cofran*, 36 Cal. 411; *Perrin* v. *Benson*, 49 Ia. 325; Cooley Tax. 349, 350. But it is not necessary to inquire into the power of voluntary correction vested in the assessor's court, since it is not made the basis of our duty by the common law or the act of 1878.

Suppose that act had not been passed, or had been repealed; and suppose a case in which Northwood's share of public expense for 1884 was $5,000; the Pillsburys' factory was worth $5,000; and in the assessment, the defendants, instead of exempting the factory, exempted all polls and all property except the factory.

In such a case, a mere equalizing abatement would wholly exempt the Pillsburys (*M. Mills* v. *Manchester*, 57 N. H. 309, 58 N. H. 38, *Railroad* v. *State*, 60 N. H. 87, 95, 96, Laws 1881, *c.* 53, *ss.* 1, 2), but would not enable them to enjoy their statutory right of public education, nor enable the community to perform its duty of protecting them in the enjoyment of life, liberty, and property. Entitled to process required by justice and convenience for the maintenance of their legal rights, the Pillsburys could obtain in this court an enforcement of the tax liabilities imposed by the legislature as the means of enabling society to accomplish the objects of its organization. They might be bound to apply for relief in a reasonable time. *B. & A. Railroad* v. *Co. Com'rs*, 116 Mass. 73, 82; *Noyes* v. *C. Council*, 116 Mass. 87; *People* v. *Common Council*, 78 N. Y. 56, 61, 62, 63; *State* v. *Bishop*, 3 N. H. 312; *Tucker's Petition*, 27 N. H. 405, 410; *True* v. *Melvin*. 43 N. H. 503, 508. But if their application were seasonably made, a denial of their right could not be grounded upon an absence of remedy in the lower court. The inability of that court to voluntarily repair its error would be a reason for repairing it in the general jurisdiction, from which the correction of such an error is not excepted. The defendants' want of power to voluntarily abate a tax, or to voluntarily make a second assessment after the first was left with the town-clerk, would not show that the legal right of the Pillsburys was not infringed by laying the whole tax of $5,000 on their factory, or that their only remedy was an injunction or other quashing or prohibitory process, against the whole tax revenue of the town.

It has been held that the proceedings of inferior tribunals may be impeached collaterally when the law has not provided a mode in which their proceedings can be revised. *Gurnsey* v. *Edwards*, 26 N. H. 224, 229. This doctrine, applied to the case of an assessment of the entire municipal revenue upon the factory, would defeat the collection of the whole tax, and leave the local government disabled by bankruptcy. The omission of a single citizen's entire taxable property in the assessment, remedied only by collateral impeachment, or abatement, or other negative and reducing process of complete equalization, would have the same effect. The Northwood assessment of 1884, including the action of the selectmen on the Pillsburys' claim of exemption, was a proceeding by which the plaintiffs would have been bound if they had not sought a revision of it in an appropriate suit. They could not resist it collaterally when the law had furnished ample means of direct contestation. *Hendrick* v. *Whittemore*, 105 Mass. 23, 28. It is not apparent how collateral impeachment can be superseded by a direct and less destructive statutory remedy, if a mode of revision was not provided by the sweeping terms of the Revised Statutes. Understood in its literal, natural, and ordinary sense, the law authorizes a direct course of curative procedure; and the probable purpose

of the legislature is indicated by the mischiefs of a different construction.

On grounds of public convenience, an ordinary tax assessment, based on an illegal exemption, has been held to be an exception to the rule that quashes, or treats as wholly void, a proceeding collaterally or directly impeached. *Dillingham* v. *Snow*, 5 Mass. 547, 558; *Inglee* v. *Bosworth*, 5 Pick. 498, 501; *Butler* v. *Worcester*, 112 Mass. 541, 556; *Kelso* v. *Boston*, 120 Mass. 297, 299; *Le Roy* v. *Mayor*, 20 Johns. 430, 441; *Strusburgh* v. *Mayor*, 87 N. Y. 452, 455. In the correction of judicial errors, our common law preserves as far as possible what is right, and destroys only what is wrong. *Lisbon* v. *Lyman*, 49 N. H. 553, 583. This rule is applicable to judicial error in the assessment of taxes. *Edes* v. *Boardman*, 58 N. H. 580, 586; *Cummings* v. *N. Bank*, 101 U. S. 153; *Hills* v. *Exchange Bank*, 105 U. S. 319, 322; *Strusburgh* v. *Mayor*, 87 N. Y. 452. In this case, it reverses the exemption without invalidating the whole assessment, and without inventing an exception for the decision of tax cases.

" Where an erroneous order of the court below is quashed on *certiorari*, and the merits of the cause are left undecided, if the constitution of the court below interposes no practical difficulty, the effect of awarding the writ is limited to the erroneous order, and the cause is remitted, with instructions to proceed. And the rule requiring the whole proceeding to be quashed is applied only in cases where the court below has no power to take up the cause after the erroneous order has been vacated, and proceed to determine the merits." *Hayward* v. *Bath*, 35 N. H. 514, 527. In the present case, the erroneous exemption cannot be reversed without an enforcible assessment of the factory. There being no express statute providing by whom or in what book of records the assessment shall be made, the duty of this court to make it, or cause it to be made, is to be performed in a reasonable and appropriate manner, with no unnecessary departure from the usual and convenient course of public business. The town book is a proper place for the record, and the present board of selectmen, or their successors, are the proper officers to make the assessment; and they can be authorized and required to make it by order of this court. There is nothing in the constitution of the court below that presents any practical difficulty. Selectmen are not a committee appointed for a special occasion, or for the performance of a single act. Their office, though filled by annual elections, is as continuous as that of any other court; and the lack of stated terms for the transaction of their judicial business is a circumstance that does not affect any right involved in this case. It is as clearly within the reason and rule of our common law that the present board, or their successors, may be compelled to make the assessment the defendants ought to have made, as that any duty wrongfully left unperformed by a lower court can ever be laid before it with

instructions to proceed, notwithstanding a personal succession by which, for such a purpose, the official continuity and identity of the tribunal is not impaired. The federal reversal (4 Wheat. 518) of the judgment rendered against Dartmouth college (1 N. H. 111) would not have been prevented by the expiration of the official term of the judges of the state court, or by their resignation or decease, and a continued vacancy. The superintending duty of causing a tax to be assessed upon the Pillsburys' factory will be performed in the reasonable, appropriate, and convenient manner which the law requires, by a judgment for an assessment to be made by the present board, or their successors. Their authority and duty under the judgment will come from the law of superintendence, which imposes upon this court the duty of reversing the exemption and causing an assessment to be properly made. There is no more need of a judgment against them, or an amendment of the petition making them defendants, than there was of a judgment against the officer to whom the *mandamus* was issued in *Supervisors* v. *Rogers*, 7 Wall. 175, or a judgment against the selectmen to whom the *mandamus* was issued in *School-District* v. *Carr*, 63 N. H. 201, 206. All persons whose violation of law is the plaintiffs' cause of action are now defendants of record.

What errors are correctible in the superintending jurisdiction is determined by common-law principles and statutory provisions, applicable in each case. In some of the authorities, confusion arises from loose and ambiguous definitions. A decision of a question of fact is described as an exercise of discretion; an exercise of judgment is spoken of when the meaning is, that the question on which the judgment is exercised is not one of law; and the superintending power is said to be restricted to ministerial as distinguished from judicial error, when the distinction intended is the difference between a question of law and a question of fact. The common law does not give a universal right of appeal from inferior courts for the mere purpose of granting a new trial of issues of fact. The superintending power is generally limited to such matters of law and fact as must be tried and decided in order to correct errors of law. When the legislature intend a court's decision of questions of fact shall be revisable by another tribunal on a new trial of the whole case whether there is error of law or not, an appeal is ordinarily provided. *Richardson* v. *Smith*, 59 N. H. 517; *Doughty* v. *Little*, 61 N. H. 365; *Ex-parte Railway Co.*, 101 U. S. 711, 720; *Com.* v. *Westborough*, 3 Mass. 406; *Com.* v. *Roxbury*, 8 Mass. 457; *Fay's Petition*, 15 Pick. 243, 254; *Carpenter* v. *Co. Com'rs*, 21 Pick. 258, 259; *Thorpe* v. *Co. Com'rs*, 9 Gray 57, 58; *Randall's Petition*, 11 Allen 473, 478; *F. R. Co.* v. *Co. Com'rs*, 112 Mass. 206; *Com.* v. *Scott*, 123 Mass. 418, 420; *Freeman* v. *Selectmen*, 34 Conn. 406, 415; *Seymour* v. *Ely*, 37 Conn. 103, 106; *Howland* v. *Eldredge*, 43 N. Y. 457, 460; *People* v. *Common Council*, 78 N. Y. 33, 40; *Queen* v. *Justices*, 3 A. & E. (N. S.) 810, 819; Dillon

Mun. Corp., *ss.* 832–837. The value of property is a question of fact; and the fair exercise of the defendants' appraising judgment was not controllable except on appeal. Cooley Tax. (2d ed.) 727, 730, 755, 758; *Goddard* v. *Seymour*, 30 Conn. 394, 399; *M. Mills* v. *Manchester*, 57 N. H. 309. But the legality of the town's exempting vote was a question of law, not submitted to the defendants for final determination. If their decision had been right, its correctness could have been contested on appeal; and the legislative purpose was that it should be equally open to review, whether in favor of exemption or against it.

The construction is, that the remedy of abatement on appeal shall be employed in cases to which it is applicable (G. L., *c.* 57, *s.* 12, *Edes* v. *Boardman*, 58 N. H. 580, *Locke* v. *Pittsfield*, 63 N. H. 122); that a method prescribed by any enactment shall be used for the purpose for which it was designed; and that cases of judicial error, revisable by the general power of superintendence, though not within any specifically enacted course of procedure, are not beyond the range of all process necessary for administering the laws. The defendants' resignation of their office, and a prolongation of the vacancy, or an abolition of the office, would not abrogate or suspend the duty of reversing the illegal exemption by operative process required by the exigency of the case. A complete statutory specification of the corrective work of the general jurisdiction, being impossible, is not attempted. Authority to issue all writs and processes needed in the performance of the general duty (inferable from the duty, if it were not expressly granted), avoids the necessity of a multifarious and insufficient enactment of specific remedies, and prevents such a failure of legal justice as occurred in *Thompson* v. *Allen County*, 115 U. S. 550.

The power of the lower court to correct this error of exemption is not a common-law limit of the correctional power of this court; the legislature have not made an express exception authorizing us to abstain from correcting all errors of lower courts that cannot be corrected by the voluntary action of those courts; and there is no evidence from which a legislative intention to make all such errors irremediable can be inferred. There is a strong presumption against the existence of a remedial defect caused by a lack of administrative authority, or by any inoperative provision of law. Obligations created by statutes which prescribe no methods of remedy are enforced by the appropriate procedure of the common law. *Wiley* v. *Yale*, 1 Met. 553, 554. When courts of special jurisdiction are not charged with the duty of vindicating rights secured by laws designed to be and capable of being judicially administered, the inference is that the duty is laid upon a general jurisdiction. The abolition of the board of equalization would not exempt railroads from the shares of public expense assigned to them by Gen. Laws, *c.* 62, *s.* 1, but would leave the judicial work of their assessment in the general jurisdiction, where it was before the board was established,

and where the shares could be recovered in common-law actions, without previous assessment, if the statute were silent on the subject of assessment and collection. *U. S.* v. *Lyman*, 1 Mason 482; *Meredith* v. *U. S.*, 13 Pet. 486, 493, 494; *D. S. Bank* v. *U. S.*, 19 Wall. 227, 240; *U. S.* v. *New Orleans*, 98 U. S. 381; Dill. Mun. Corp., *s.* 818. A repeal of the act of 1878 (G. L., *c.* 57, *s.* 10) would not deprive the public of any remedy in this court for a violation of the right of assessment, but would merely abolish either the remedy of selectmen's voluntary reassessment, or the year's limitation of it. A repeal of every statute that authorizes the assessment of taxes by tribunals of special and limited jurisdiction would evince, not a design to bring all local government to an end by cutting off its revenue, or to bankrupt or cripple the body politic (formed by the first article of the constitution, and entitled by the eighty-fourth article to legislative allegiance and support), but an intention that such statutes as *cc.* 53 and 54 of the Gen. Laws, dividing the public expense, and imposing contributory liability, if executable in no other way, should be carried into effect by the court of general jurisdiction performing its ordinary duty of rendering judgment, and issuing process in cases in which there is no other judicial mode of administering the law. Nothing less than a positive declaration of an intent to render all such statutes inoperative could justify a belief that the law-making power had adopted a measure so subversive of civil society.

The objection that a supplementary assessment of the factory will make the whole assessment of the town too large could be waived by the tax-payers who had that grievance, as it could be if the defendants, or their successors, had voluntarily reversed the exemption before April 1, 1885. All who were excessively taxed could obtain abatements, or waive the objection by making no complaint. Some might choose to avoid the cost which might not deter others from litigation. This suit would not be barred by the plaintiffs' election not to incur the expense of an appeal for an abatement. By contributing more than their share of the common burden, they would not waive their right to the payment of the Pillsburys' share.

A failure of justice, sometimes caused by difficulties of a practical nature, is no argument against the correction of the defendants' error. The inability of a sheriff to overcome resistance is not a legal reason for withholding a writ. The inability of a plaintiff to find property for the satisfaction of his just claim is no cause for rendering judgment against him, or refusing either to render judgment in his favor or to issue process of enforcement. By the expiration of an estate for years, or a term of office, during the pendency of a suit for its recovery, the title, whether vested in the plaintiff or in the defendant, is terminated. In the present case, the subject of litigation has not ceased to exist. The public right to the factory's share of expense was not limited in duration to the

year in which the defendants and their successors could voluntarily
give the remedy of a supplementary assessment.   If the error of
exemption had not been committed, or had been repaired, the right
would not have expired on the last day of March, 1885; and the
continued existence of the right did not depend upon its escaping
violation in the court of assessment.

The year's limitation of the time of voluntary amendment in
that court might be relevant on the question of the reasonable
time within which this suit could be brought.   By analogy to stat-
utes, a person's death may be presumed from his not being heard
from for seven years.   *Smith* v. *Knowlton,* 11 N. H. 191, 196.   In
cases where the legislature have not fixed a precise rule of limita-
tion, rights may be acquired and barred by a prescription of such
length of time as is prescribed by a statutory rule in analogous
cases.   *Wallace* v. *Fletcher,* 30 N. H. 434, 447.   Reasonable notice
of legal proceedings, and the reasonable time for redeeming land
from a mortgage, may be determined in a similar manner.   *True*
v. *Melvin,* 43 N. H. 503, 507; *Murphy* v. *Bank,* 63 N. H. 362.   It
might be claimed that by analogy to the statute allowing select-
men, of their own motion, to make a reassessment within the tax
year, or the statute allowing an appeal for an abatement of a tax
within nine months after notice of its assessment, the reasonable
time for the plaintiffs' application to this court was either the tax
year, or nine months after they had notice of the non-assessment
of the factory.   Whatever was the limit of reasonable time (High
Extr. Remedies, *ss.* 30 *b,* 204, 269), their action, brought at the
June term, 1884—the first term at which it could be entered after
the wrong was done—was seasonably commenced.   There was no
delay of prosecution, and no fault on their part; and their right
was not lost by our taking necessary time to establish it in the for-
mer decision.

It is not now denied that the plaintiffs were entitled to judgment
when they brought this suit, and for ten months afterwards.   The
legal construction of statutes is the ascertainment of the fact of
legislative purpose from competent evidence.   *Edes* v. *Boardman,*
58 N. H. 580, 592; *Burke* v. *Concord Railroad,* 61 N. H. 160,
233; *State* v. *Hayes,* 61 N. H. 264, 330; *Sargent* v. *School-District,*
63 N. H. 528, 529, 530; *Whitney* v. *Whitney,* 14 Mass. 88, 92.
And upon sound principles of construction we cannot find the fact
that the legislature intended mere lapse of time should bar the
plaintiffs' right of action while it was in the custody of the law,
and they could do nothing but wait for judgment.   The intention
of the legislature was, that such suits should be brought and sub-
mitted to the court for decision, and that judgments should be ren-
dered for the reversal of such illegal exemptions.   And the risk on
the one hand of rendering judgment against the legal merits upon
insufficient deliberation, and the certainty on the other hand of a
judgment entirely regardless of the merits if time were necessarily

taken for their due consideration after a certain day, would be a needless dilemma that cannot be respectfully attributed to the purpose of the law-making power. The decision which the legislature meant the court should make is upon the merits, and after requisite investigation.

It is an old doctrine, that things happening by an invincible necessity, though they be against common law or an act of parliament, shall not be prejudicial. " When statutes are made, there are some things which are exempted and fore-prized out of the provisions thereof by the law of reason, though not expressly mentioned : thus, things for necessity's sake, or to prevent a failure of justice, are excepted." Dwarris Stat. (Potter's ed.) 123. "The law itself, and the administration of it, must yield to that to which everything must bend—to necessity. The law, in its most positive and peremptory injunctions, is understood to disclaim, as it does in its general aphorisms, all intention of compelling them to impossibilities; and the administration of laws must adopt that general exception in the consideration of all particular cases." *The Generous*, 2 Dods. 322, 323; *Hall* v. *Sullivan Railroad*, 21 Monthly Law Reporter 138, 147. The general exception is a general rule of statutory construction.

"As a general rule, when a duty is at the proper time asked to be done, and improperly refused to be done, the right to compel it to be done is fixed, and is not destroyed by the lapse of the time within which in the first place the duty ought to have been done." *Lewis* v. *Com'rs*, 16 Kan. 102, 108. A statute provided that certain located lands should be surveyed within twelve months, or the location should be void. The public surveyor having refused to do his duty, a *mandamus* was issued against him; but the survey was not completed within the year. It was held, nevertheless, that the survey was valid on the ground that the legislature did not intend to compel a locator to do an act wholly out of his power. *Edwards* v. *James*, 13 Tex. 52. The general rule of construction, in regard to the exception of impossibilities, prevailed against the express provision that the location should be void if the survey were not made within the year. The surveyor's duty was not judicial, and if he had refused to obey the *mandamus*, the survey would not have been made by the court; but he would not defeat the right of survey by going to jail for the remainder of the year for contempt, or by going out of the state and remaining beyond the reach of process, or by dying at the end of the year, leaving his duty unperformed. The statute did not expressly authorize the work to be done by any other surveyor than the one in office during the year; but the legislature did not mean that he should be the only one to whom a *mandamus* could issue. If a *mandamus* to his successor were necessary, it would be such an appropriate and adequate remedy as the legislature intended the locator should have. By the ordinary rule of construction, if the locator were in

no fault in such a case, the limitation of time would be suspended till a surveyor came into office who would obey a *mandamus*.    By the same rule, statutory limitations of time are suspended when causes of action are fraudulently concealed, and when courts are closed, and remedies of action or appeal are stayed, by war. *Hanger* v. *Abbott*, 6 Wall. 532; *The Protector*, 9 Wall. 687.

When a statute extending the term of a patent right provides that the right shall cease if it becomes vested, at any one time, in a certain number of persons otherwise than by devise or succession, an involuntary assignment in bankruptcy, being an act of the law, is an implied exception.    Dwarris Stat. 124.    In *Mattingly* v. *Boyd*, 20 How. 128, on a process of foreign attachment, the trustee was restrained from paying his debt by an order of court. The suit abated by the plaintiffs' death after the restraining order had been in force twenty-six years.    During that time, the right of action of the trustee's creditor, and the statute of limitations, were suspended, because the fund was in the control of the law. The intended exception of such a case, not expressed in the statute, was implied by the general rule of construction.

*Mara* v. *Quin*, 6 T. R. 1, was an action of debt against an executrix.    In Michaelmas term, 1791, she pleaded *plene administravit*.    The plaintiff then cited the defendant in the spiritual court to exhibit an inventory, but could not obtain an account until July, 1793.    This delay prevented his entering up judgment until Michaelmas term, 1793, when he took judgment for his debt to be paid out of assets that should afterwards come to the hands of the executrix.    He afterwards discovered that assets had come    to her hands before judgment, and after plea.    For the purpose of reaching those assets, it was held, in 1794, in *scire facias* on the judgment, that the judgment would then be rendered as of Michaelmas term, 1791, if justice required such an amendment.    The defendant did not fail to argue that there was not a single precedent to warrant such a proceeding, and that if the judgment could be altered so as to carry it back two years, it could be altered and carried back a longer time.    Lord *Kenyon* said,—"The forms of the court are always best used when they are made subservient to the justice of the case."    An amendment, made in 1794, by which the judgment of 1793 would be called a judgment of 1791, and by which it would be rendered *nunc pro tunc*, would not change the time when it was rendered    The fact that it was recovered in 1793 would remain apparent on the record; no amendment could alter the fact, or impair the conclusive proof of it; and the law would not falsely pretend to deceive itself by giving the judgment a wrong date.    An amendment ante-dating the judgment two years would be a mere technical form of recording the decision that the law gave the judgment the effect it would have had if it had been rendered in 1791.    A useless appearance of falsification would be avoided by a clause inserted in the judgment when it was rendered,

or by amendment afterwards, declaring that the judgment was payable out of assets coming to the hands of the executrix after Michaelmas term, 1791, or expressing more accurately the effect of the judgment, and providing out of whose and what property it was payable, and by what execution it should be enforced.

*Springfield* v. *Worcester*, 2 Cush. 52, 62, was an action for the support of a pauper. After verdict for the plaintiff, the case was continued for the consideration of questions of law, and before those questions were decided the statute on which the action was brought was repealed. Judgment was rendered for the plaintiff, as of the term when the verdict was rendered; this course was held to be authorized by the common law; and the result would have been the same if the facts, instead of being found by the jury, had been agreed to by the parties. The decision was approved in *Whiting* v. *Whiting*, 114 Mass. 494, 496, and *Tapley* v. *Goodsell*, 122 ·Mass. 176, 181. If the statute by which the Pillsburys' liability was imposed, and on which this suit was brought, had been repealed March 31, 1885, *Springfield* v. *Worcester* would be an authority for an assessing judgment rendered now as of December term, .1884. The rendition of the judgment in *Springfield* v. *Worcester*, as of a former term, was a judicially invented mode of recording the decision that the judgment had the legal effect it would have had if it had been rendered at the former term. A more direct and specific record would be, "It is further considered and adjudged by the court that this judgment has and will have the legal effect it would have had if it had been rendered before the repeal of the statute which created the plaintiff's right and the defendant's liability." While the judgment would not have been weakened by inserting this conclusion of law, it would not have been void if it had contained no evidence of the decision on the repeal of the statute. The rights of the parties were not affected by the repeal. That was the law to be administered with or without the supposititious procedure of *nunc pro tunc*. Upon that law, Springfield was entitled to an execution for damages and costs, whether the judgment falsely purported to be rendered at a former term, or truly asserted its effect to be the same as if the statute had not been repealed, or were silent on the subject. Its validity did not depend upon its containing either a statement of its legal effect on this point, or any other matter of law decided by the court, announced in their reported opinion, and involved in the adjudication that the plaintiff recover damages.

If the question of exemption in this case had been decided at the March adjourned term, 1885, a *mandamus* would have issued to the selectmen of Northwood and their successors in their official capacity. There would have been no more need of their names in the writ than of the name of the sheriff in an execution addressed to that officer. *Davis* v. *Bradford*, 58 N. H. 476 ; *School-District* v. *Carr*, 63 N. H. 201. 206 ; *People* v. *Champion*, 16 Johns. 61, 65 ;

*People* v. *Supervisors*, 8 N. Y. 317, 330; *Com'rs* v. *Sellew*, 99 U. S. 624; *State* v. *Warner*, 55 Wis. 271; Dillon Mun. Corp., *s.* 886. By defiance or evasion of the writ until the first day of April, 1885, they would not have defeated the public right. The impossibility of the plaintiffs' obtaining an assessment of the factory within the year by *mandamus* was like the failure of the plaintiff in *Edwards* v. *James*, 13 Tex. 52, to obtain a survey of land within the same time by the same process, and like the inability of the plaintiff in *Springfield* v. *Worcester*, 2 Cush. 52, to recover judgment before the repeal of the statute on which the action was brought. If there had been a year's limitation of the superintending remedy, it would have been suspended in this case by the court's delibera- tion, as it would have been during a delay caused by a belligerent closure of the court, or the death or sickness of the judges, or a continuance for argument on account of a press of judicial busi- ness. *Actus curiæ neminem gravabit* is an application of the prin- ciple *actus legis nemini facit injuriam*. Broom L. Max. 86, 89. "A *nunc pro tunc* order is always admissible when the delay has arisen from the act of the court" (*Gray* v. *Brignardello*, 1 Wall. 627, 636), "that the delay arising from the act of the court may not turn to the prejudice of the party." Tidd Prac. (3d ed.) 846. A continuance for advisement is an act of the law; and when a party dies after such a continuance and before judgment, the law can work out its scrupulous abstention from injury by imagining a judgment rendered at a former term, refusing to see in its own record explicit proof of the date, and finding in the fiction a mode of applying the rule that its own act works no wrong. *Parker* v. *Badger*, 26 N. H. 466, 468; *Kelley* v. *Riley*, 106 Mass. 339, 341. A mode of applying the rule without artifice would be found in an undisguised record of the adjudication that the judgment has the same effect as if it had been rendered before the party's death. If fictitious proceedings were needed for the application of the rule in this case, they would easily be supplied. The tax can be assessed by this court in a judgment rendered now as of December term, 1884. "An assessment of the exempted property being a judicial act and the only possible reversal of the exemption, the power of assessment is necessarily included in the power of reversal." But the provision, implied by the ordinary statutory construction, against the requirement of an impossibility, and against the inflic- tion of a wrong by an act of the law, can be administered without antedating the assessment. The law has kept on foot its superin- tending duty of correction while it continued the case for advise- ment and withheld from the plaintiffs the judgment and process to which it had given them a good title, and for which it had invited and induced them to incur the expense of this suit. Their prom- ised protection has been unavoidably delayed: but the law does not wantonly destroy the right which its promise has drawn into its judicial possession; and it has no occasion to adopt any other

than a straightforward mode of announcing and recording the date and effect of its judgment.

*Judgment for the plaintiffs.*

CLARK, J., did not sit: ALLEN, SMITH, and BLODGETT, JJ., concurred.

CARPENTER, J., *dissenting.* The question for consideration arises upon the objection of the defendants, made after the judgment reported in 63 N. H. 320 was pronounced, that the writ cannot issue against them because the tax year 1884 and their term of office have expired, and they consequently have no power to make the assessment.

Argument has taken a wide range. Many questions have been discussed, a decision of which, in the present state of the pleadings, is not necessary. The questions whether the defendants' successors in office, or any persons other than the defendants, can be required to make the assessment, whether the court can itself assess the tax or adjudge in general terms that it shall be assessed, and various other questions incidentally presented and argued, do not properly arise. Without as well as with the prayer for " such other relief as may be just," the plaintiffs may have any relief against the defendants to which they are found entitled. It is the duty of the court to render such judgment between the parties as upon the whole record appears to be proper, but no judgment can be rendered for or against persons who are not parties. If it has been held in other jurisdictions that final judicial process may issue against persons not parties to the proceeding and who have had no notice and no opportunity to be heard, such is not the law of this state. *Brown* v. *Sceggell,* 22 N. H. 548, 552; *Horn* v. *Thompson,* 31 N. H. 574; *Bruce* v. *Cloutman,* 45 N. H. 37, 38; *Wilbur* v. *Abbot,* 60 N. H. 40; *Holbrook* v. *Bowman,* 62 N. H. ——; *Eastman* v. *Dearborn,* 63 N. H. 364; *Pennoyer* v. *Neff,* 95 U S. 714, 732; *Secretary* v. *McGarrahan,* 9 Wall. 298; *United States* v. *Boutwell,* 17 Wall. 604, 608. Neither the defendants' successors in office nor the Pillsburys are parties. They have had no notice of the proceeding. They have had no hearing and no opportunity to be heard. They are not concluded or affected by the facts found. *Ball* v. *Danforth,* 63 N. H. 420. A judgment against the selectmen now in office, requiring them to assess the tax, or against the Pillsburys, that a tax be assessed by the court or by any one under its direction, would be a judgment rendered without jurisdiction.

The plaintiffs can have no relief against the defendants except the writ of *mandamus* specifically prayed for. If they are not entitled to that remedy, their petition (in default of an amendment bringing in other parties) must be dismissed. The defendants,

being selectmen of Northwood for the year 1884, neglected to assess on the property of Pillsbury Brothers a tax which the law required them to assess. Their term of office, as well as the tax year 1884, has long since expired. The sole question before the court is, whether it can lawfully order them to do now that which they ought to have done while in office. It is not material whether a Latin, English, or other name be given to a judicial order of this character. To its lawful issue under any name, or in any form, two essential requisites must concur, namely, (1) a right in the plaintiff to have the thing in question done, and (2) power in the party against whom the order is sought to do it. If either is wanting, the application must be denied. Here both are wanting. The defendants have no power to assess the tax, and the plaintiffs have no right to its assessment.

By the constitution (Bill of Rights, Arts. 12, 28; Part II, Arts. 5, 6), and the uniform practice under it for more than a hundred years, no property can be taxed except such as is declared taxable by the legislature. Property not expressly subjected by statute to taxation is exempt. *Opinion of the Justices*, 4 N. H. 570; *Brewster* v. *Hough*, 10 N. H. 143; *Savings Bank* v. *Nashua*, 46 N. H. 392, 395, 396. Much property always has been and still is untaxed. Acts of February 7, 1789; February 8, 1791; February 22, 1794; December 26, 1798; December 24, 1803; December 16, 1812; July 3, 1830; January 4, 1833; Rev. St., c. 39; Gen. St., c. 49; G. L., c. 53.

Selectmen are public officers whose powers and duties are prescribed by statute. They have no authority to assess taxes or to do any official act except such as is conferred upon them by the legislature. Although they exercise some functions of a judicial nature (*Edes* v. *Boardman*, 58 N. H. 580), they are not within the meaning of the constitution (Bill of Rights, Arts. 33, 35, 37; Part II, Arts. 4, 46, 73–82), or of G. L., c. 208, s. 1, judges, judicial officers, or a court.

They are required to take annually, in April, an invoice of all the polls and estate liable to be taxed in their town on the first day of that month, and upon it to assess all taxes for the year following; to make a fair record of the invoice and of the taxes assessed, and before July 1 to leave it, or a copy of it, with the town-clerk to be recorded, and kept "open to the inspection of all persons." G. L., c. 55. s. 1; c. 57, ss. 1, 3, 6. Until the act of August 17, 1878 (G. L., c. 57, s. 10), they had no authority to modify or amend the record after its delivery to the clerk. When their invoice and assessment were completed and recorded, their taxing power was exhausted. *Bristol Co.* v. *Gridley*, 27 Conn. 227; *Clark* v. *Norton*, 49 N. Y. 243; *People* v. *Delaney*, 49 N. Y. 655; *Overing* v. *Foote*, 65 N. Y. 263. Errors not curable by abatement under Gen. Laws, c. 57, ss. 11, 12, were irremediable. Assessed taxes might for good cause be abated, but no other or additional tax

could be assessed. It happened not unfrequently that in taking the invoice taxable property was overlooked, or set down to a person not liable to be taxed for it. All such property, however speedily after the completion of the record the mistake was discovered, escaped taxation. To remedy in some degree this mischief, the statute of 1878 (G. L., c. 57, s. 10) was enacted. It is not a restrictive, but an enabling and remedial act. It confers upon the selectmen a power which they did not possess. *Harwood* v. *North Brookfield*, 130 Mass. 561, 564, 565; *Noyes* v. *Hale*, 137 Mass. 266, 271. By it they are authorized to correct at any time, before the expiration of the tax year, and not afterward, two classes of errors, viz., omissions to tax taxable property, and the taxation of it to persons not liable. Other mistakes quite as serious and quite as likely to happen they cannot correct. An error of undervaluation, for example, may effect as great inequality of taxation as an omission to assess, but though discovered immediately after the record is delivered to the clerk, it is irremediable except by a proportional abatement of all other taxes, which would be in most cases impracticable, and in many impossible. The legislature might, if it thought proper, authorize a correction of all errors, and at any time as well after as before the expiration of the tax year. It has not seen fit to do so. For reasons satisfactory to the legislative judgment it has restricted the exercise of the corrective power to the errors mentioned and to the tax year. It may have considered that a revision by the selectmen of the doings of their predecessors would produce greater mischief than the occasional escape of taxable property from taxation. Whether the legislature has acted wisely or unwisely is not material. Under the law as it stands, the selectmen of Northwood holding the office in the tax year beginning April 1, 1884, and ending March 31, 1885, and they only, were authorized to correct, within the year and not afterward, the error of omitting to tax the Pillsbury property by assessing upon it a tax for that year. This proposition is not denied. The plaintiffs concede that the defendants cannot now of their own motion assess the tax, but insist that they may nevertheless be authorized and compelled to assess it by the court. In this view it is immaterial that they were in 1884 selectmen of Northwood. If the court can confer the power, it may give it as well to any other persons as to them, and this petition might have been as properly brought against the county commissioners, the sheriff, or any private citizens of Northwood or of the state, as against the defendants.

It is the province of courts to vindicate legal rights and redress legal wrongs; to administer not abstract justice, or justice as they may think it to be, but justice as declared by law. *Freeman* v. *Tranah*, 12 C. B. 413, 414. They may ascertain rights under the established law, award compensation for their violation, and in some cases restrain the commission of threatened wrong and com-

pel the performance of legal duty. Beyond this they have no power to go. To create obligations, to impose duties and to confer powers, are functions, not of the law-administering but of the law making branch of the government. "Judicial power as contradistinguished from the power of the laws has no existence. Courts are the mere instruments of the law, and can will nothing." *Osborn* v. *U. S. Bank*, 9 Wheat. 866. In proper cases they may issue their mandate to a public officer requiring him to perform his official duty. But by it no new duty is imposed or power conferred. By virtue of it the officer is charged with no obligation not previously incumbent upon him, and can take no action which he could not take without it. "No court," says *Strong*, J., in *United States* v. *County of Clark*, 95 U. S. 773, "will by *mandamus* compel . . . officers of a state to do what they are not authorized to do by the laws of the state. A *mandamus* does not confer power upon those to whom it is directed. It only enforces the exercise of power already existing where its exercise is a duty." "The court never grants a *mandamus* except it indisputably sees that there is a power lodged in the person to whom the *mandamus* is prayed." *The King* v. *Bishop of Ely*, 1 W. Bl. 58. "It is used merely to compel action, and coerce the performance of a preëxisting duty. In no case does it have the effect of creating any new authority or of conferring power which did not previously exist, its proper function being to set in motion and to compel action with reference to previously existing and clearly defined duties. It is therefore in no sense a creative remedy, and is only used to compel persons to act where it is their plain duty to act without its agency." High. Ex. Rem., *s.* 7, and *ss.* 9, 10, 14, 24, 25, 32, 36, 37, 39, 80–99. No case has been cited and none has been found in which it has been held that a writ of *mandamus* or other precept may be lawfully directed to a person not by law authorized and bound to execute it. In *Supervisors* v. *Rogers*, 7 Wall. 175, a *mandamus* to assess a tax was directed to the marshal, under a statute authorizing it to be so directed. *Barkley* v. *Levee Commissioners*, 93 U. S. 264, 265. In the last named case (93 U. S. 258) a *mandamus* was denied, for the sole reason that the defendants were not authorized by law to execute the command.

The court cannot lawfully issue an order to any person not bound by law, independent of the order, to obey it. Power to command implies the duty of obedience. The fact that no person is bound by law to obey a particular command is conclusive evidence that the court cannot lawfully make it. The sheriff is obliged to execute a precept of the court, not by force of the court's command, but because it is by the statute (Gen. Laws, *c.* 216 *s.* 3) made his duty. If it has ever been held that an order of the court in any form or under any name can be legally made, except to enforce the performance of an obligation by law incumbent upon the party to whom it is directed, the case has not been cited. If

the court of king's bench possessed the power to compel individuals to do that which they were not required by law to do, or which they had no lawful power to do, no instance of its exercise has been called to our attention. The unquestioned authority of that court to keep all inferior tribunals within their jurisdiction, and to correct their errors of law, does not include the power to create such tribunals, to confer upon them authority, or to do the work which the law declares shall be done exclusively by them.

The legislature has imposed duties of a judicial nature upon a great number of public officers and official bodies, and has given them, in many cases, final and exclusive jurisdiction of the matters entrusted to their determination. So it is, for example, in the case of supervisors regulating the check-list (G. L., c. 30); the school-committee dismissing a teacher (G. L., c. 89, s. 7) or a scholar (G. L., c. 91, s. 3); county commissioners locating a school-house (G. L., c. 88, ss. 6, 7); selectmen dismissing a prudential committee (G. L., c. 87, s. 15), or ordering mill-owners to repair or build (G. L., c. 141, ss. 2, 4, 7, 8); fence-viewers (G. L., c. 142); health officers, acting under Gen. Laws, c. 111, s. 3, c. 112, ss. 2, 7, c. 113, ss. 2, 3, 5, 7; courts-martial, under Gen. Laws, c. 104, ss. 8, 13, 25, 26; railroad commissioners, in fixing tables of maximum charges under Laws of 1883, c. 101, s. 4; and of a justice of the peace, removing an incumbrance from the highway, under Gen. Laws, c. 76, s. 5. In these and other similar cases the supreme court has no authority under the statute (G. L., c. 208, s. 1), or at common law, except to keep the tribunals within their jurisdiction, and see that their proceedings are regular. It may quash their doings for want of jurisdiction or for irregularity, but cannot revise their decisions upon the merits, or do what they ought to have done. It cannot remove incumbrances from the highway, dismiss teachers, locate school-houses, divide fences, etc., etc., for the plain reason that it has no jurisdiction of the subject-matter. Regina v. Bolton, 1 Q. B. 66, 72; Rex v. Monmouthshire, 8 B. & C. 137; Rex v. Glamorganshire, 1 Ld. Ray. 580; Owen v. Hurd, 2 T. R. 643; 1 Tidd's Pr. (3d Am. ed.) 398; Railway Co. v. Lythgoe, 10 C. B. 726; Beswick v. Boffey, 9 Exch. 315; Fraser v. Fothergill, 14 C. B 298; Railway Co. v. Grace, 2 C. B. N. S. 555; Carr v. Stringer, E. B. & E. 123; Clifton v. Furley, 7 H. & N. 783; Freeman v. New Haven, 34 Conn. 406, 415; Com. v. Westborough, 3 Mass. 406; Com. v. Roxbury, 8 Mass. 457; Com. v. Ellis, 11 Mass. 466, 467; Farmington Co. v. Com'rs, 112 Mass. 206, 213; Kempton v. Saunders, 132 Mass. 466, 468; Petition of Landaff, 34 N. H. 163, 173, 176, 178; Hayward v. Bath, 35 N. H. 525, 526; Railroad v. Folsom, 46 N. H. 64, 66; Richardson v. Smith, 59 N. H. 517, 519.

The fact that this action was begun during the tax year of 1884, while the defendants were in office and had power to assess the tax and while the plaintiffs were entitled to have it assessed, is imma-

terial. In civil suits the rights of the parties are generally determined as of the time when the action was commenced, because that is the question presented by the pleadings. The cases however are numerous in which a cause of action, good in the beginning, is lost while the suit is pending. If at any time before final judgment matter arises showing that the plaintiff is not entitled to the relief he seeks, and it is properly brought to the attention of the court, his action fails; as if, for example, he becomes an alien enemy, is outlawed, or suing as administrator his letters are revoked, or if the defendant obtains his discharge in bankruptcy. In these instances, and many others of like character, judgment goes against the plaintiff, although he set out with a good cause of action. Some matters of defence accruing after the commencement of the suit must be pleaded; others, as in this case, consist of facts judicially noticed, which need never be pleaded. In all legal proceedings courts are bound *ex officio* to give such judgment as appears upon the whole record to be proper without regard to the issues found or to the prayer for judgment. *Kittredge* v. *Emerson,* 15 N. H. 227, 239; *Rochester* v. *Whitehouse,* 15 N. H. 468, 474; *Le Bret* v. *Papillon,* 4 East 502; Broom Leg. Max. 138.

The general principles of pleading prevail in petitions for *mandamus,* so far as the nature of the proceeding admits of their application. High Ex. Rem., *ss.* 448, 451, and cases cited; *People* v. *Baker,* 35 Barb. 105, 113—*S. C.,* 14 Abb. Pr. 19, 32; *State* v. *Elkinton,* 1 Vroom 335. *Mandamus* cannot issue to an officer if pending the suit he has resigned his office (*Secretary* v. *McGarrahan,* 9 Wall. 298, *United States* v. *Boutwell,* 17 Wall. 604, *State* v. *Elkinton, supra, State* v. *Guthrie,* 17 Neb. 113, *Mason* v. *School-District,* 20 Vt. 487), if his authority to act has been taken away by a repeal of the law (*Miller's Case,* 1 W. Bl. 451, more fully reported under the name of *Rex* v. *Justices, &c., of London,* 3 Burr. 1456, *Springfield* v. *Hampden,* 6 Pick. 501) or has expired by limitation of law (*Williams* v. *Com'rs,* 35 Me. 345, *McGuire* v. *Waterman,* 5 Nev. 323), if it will expire before the act sought to be enforced can be performed (*The King* v. *Com'rs,* 2 Ld. Ray. 1479, *Woodbury* v. *Com'rs,* 40 Me. 304), if the act has in the meanwhile been done (*State* v. *Schofield,* 41 Mo. 38), or to restore to office one who before final judgment has become disqualified to hold it. *Webber* v. *Zimmerman,* 23 Md. 46. And generally the petition must be dismissed if, at any time before the writ is granted, it appears that the plaintiff is not entitled to it. *People* v. *Batchellor,* 53 N. Y. 128.

Judgment *nunc pro tunc* cannot be rendered; the nature of the proceeding forbids it. The only judgment which can be rendered for the plaintiffs is, that the writ issue commanding the defendants personally to assess the tax. Judgments requiring for their execution the personal action of a defendant stand on widely different grounds in this respect from those to the effective oper-

ation of which no such action is necessary, and which may be performed by his administrator, or satisfied out of his estate. Judgments of the latter character may, in proper cases, be rendered after a party's death, as of a term of the court when he was living. *Blaisdell* v. *Harris*, 52 N. H. 191; *Freeman* v. *Tranah*, 12 C. B. 406. Obviously in *mandamus* such a judgment cannot be effectively rendered against a dead defendant. With no more reason can it be lawfully rendered against a defendant to compel official action after the expiration of his official life. *Springfield* v. *Hampden*, 6 Pick. 501, was an application for *mandamus* to the commissioners of highways. While it was pending, the act creating the office was repealed. In reply to a suggestion that the writ might be awarded *nunc pro tunc*, *Parker*, C. J., says, " the cases in which this discretionary power has been exercised were wholly dissimilar to this, and we do not feel authorized to extend the principle further than it has heretofore been applied. . . . We should by so doing give power and jurisdiction by a fiction to a tribunal which has by the act of the legislature ceased to exist, and this would be legislative power, which we are not authorized to assume." If the board of censors, in *Gage* v. *Censors*, 63 N. H. 92, had pending the litigation come to an end by limitation, or by a repeal of the statute creating it, the court could not, without a usurpation of legislative power, have prolonged its existence, or have required the persons formerly composing it to give the plaintiff a trial and adjudge whether he was or was not entitled to a license. The way in which an officer's authority is terminated, whether by expiration of his term of office, by repeal of the statute creating it, by other act of the law, by his resignation, removal, or death, cannot be material. In no one of these instances is the power of official action more effectively gone than in another. The court is no more incapable of restoring it by the law of nature in the one case than it is in the others by the law of the land.

The plaintiffs have no right to have the assessment made. It is not the plaintiffs' constitutional right to equal taxation, but their statutory right to the assessment of the particular tax on the Pillsbury factory, which is in question. The plaintiffs assert under the statutes a specific right, which in the absence of the statutes confessedly does not exist. The inequality of taxation, if any, produced by them is immaterial except upon the question of their construction, if that is doubtful. It is also immaterial, for reasons already stated, that the right existed during the tax year of 1884. The question is upon its existence now. The Pillsburys have rights. Any view of the case which leaves them out of consideration is inadequate and deceptive. The plaintiffs' right, and the Pillsburys' liability to the assessment, are coëxtensive and correlative: the former cannot exist without the latter. If there is no provision of the statute requiring the assessment to be made, it is the Pillsburys' right that it shall not be made.

One "great end for which men entered into society was to secure their property." By the common law "that right is preserved sacred and incommunicable in all instances where it has not been taken away or abridged by some public law for the good of the whole. The cases where this right of property is set aside are various. Distresses, executions, forfeitures, taxes, &c., are all of this description, wherein every man by common consent gives up that right for the sake of justice and the general good. By the laws of England every invasion of private property, be it ever so minute, is a trespass. No man can set his foot upon my ground without my license but he is liable to an action though the damage be nothing. .· . . If he admits the fact, he is bound to show, by way of justification, that some positive law has empowered or excused him." Lord *Camden*, in *Entick* v. *Carrington*, 19 How. St. Tr. 1066. Every charge upon the subject must be imposed by clear and unambiguous language. Dwar. Stat. 646; *Calladay* v. *Pilkington*, 12 Mod. 513; *Davison* v. *Gill*, 1 East 64; *Rex* v. *Croke*, Cowp. 26; Lofft 438, 439. "The rule of law," says *Wilde*, C. J., in *Gosling* v. *Veley*, 12 Q. B. 407, "that no pecuniary burden can be imposed upon the subjects of this country, by whatever name it may be called, whether tax rate or toll, except upon clear and distinct legal authority established by those who seek to impose the burden, has been so often the subject of legal decision that it may be deemed a legal axiom, and requires no authority to be cited in support of it." "The law of England is most careful to protect the subject from the imposition of any tax except it be founded upon and supported by clear and distinct lawful authority." *Gosling* v. *Veley*, 4 H. L. Cas. 726, 727, 781. If the government seeking to recover the tax cannot bring the subject within the letter of the law, the subject is free however clearly within the spirit of the law the case may appear to be. *Partington* v. *Att'y-General*, L. R. 4 H. L. 122. The doctrine that a person's property cannot be taken to satisfy either his debts to individuals or his obligations to the public, or for any other purpose, except in conformity with the provisions of law authorizing it to be taken, has never, it is believed, been departed from by the courts of any jurisdiction where the common law prevails. The cases are numerous in which levies of executions upon the property of a debtor have been held invalid by reason of a non-compliance with particular provisions of the statutes. *Mead* v. *Harvey*, 2 N. H. 495, 497; *Libbey* v. *Copp*, 3 N. H. 45; *Simpson* v. *Coe*, 3 N. H. 85, 87, 89; *Woodward* v. *Gates*, 4 N. H. 548; *Rix* v. *Johnson*, 5 N. H. 520; *Cogswell* v. *Mason*, 9 N. H. 48, 50; *Whittier* v. *Varney*, 10 N. H. 291, 295, 296; *Rangeley* v. *Goodwin*, 18 N. H. 217; *Avery* v. *Bowman*, 39 N. H. 393; *Welch* v. *Ossipee Bank*, 58 N. H. 147; *Saunders* v. *Bank*, 61 N. H. 31.

By Gen. Laws, cc. 237 and 238, all real estate except the homestead right is declared liable for the payment of the owner's debts.

But if a debtor's land happens to be so situated that a levy of an execution cannot be made upon it in the mode pointed out by the statute, his creditor cannot take it. *Russell* v. *Dyer*, 40 N. H. 173. "No doctrine," says *Bell*, C. J. (*pp.* 183, 184), "has received more universal assent than that in disposing of a debtor's lands by compulsory proceedings under a statute for the payment of his debts, the course prescribed is to be strictly followed. A failure to comply with any of the substantial requirements of the statute renders the proceedings void, and leaves his title to the land unaffected . . . If proceedings of this essential character cannot be had in conformity to the statute in reference to land situated in unincorporated or uninhabited places, . . . the authority under the statute to sell a debtor's right of redemption does not extend to lands so situated." Upon a motion for a rehearing, this doctrine was affirmed. *Russell* v. *Dyer*, 43 N. H. 396. The court there say (*p.* 401), that while it was the avowed object of the statute to make all of a debtor's property, except specific exemptions, liable for the payment of his debts, "the creditor who would make it available for his benefit must in every instance show an exact compliance with the provisions of the statute, as to the mode of the set-off. No discretion was left to the creditor, or officer, or to the court, as to the way in which the debtor's lands were to be subjected to the payment of his debts. The statute provisions must be explicitly followed. . . . Where a statute makes any part of a man's property liable for the payment of his debts, it also provides a way in which it may be taken and sold, and unless all the provisions of the statute are followed, the benefits to be derived from the statute cannot be gained; and if a statute of this kind fails to provide a way in which any right or property may be sold, then there is no provision for its sale at all." In *Lebanon* v. *Griffin*, 45 N. H. 563, the court say,—"We regard the decision in *Russell* v. *Dyer* as settling the question that where a party relies upon the provisions of a statute on which alone his claim or right depends, he must show a compliance with the terms and conditions of the statute. It is not enough that he shows he did all that was in his power to comply with them."

The cases in which the doctrine has been applied to the assessment and collection of taxes are much more numerous. A few of those decided in other jurisdictions are collected in Cooley on Taxation, *pp.* 209, 257, 258–290, 296, 326, 354, and in Cooley Const. Lim. (4th ed.) 643–649. In all, without, it is believed, an exception, it is held essential to the validity of an assessment that every material requisite of the statutes be complied with. "Taxation for public purposes is a conceded power of government, but it must be enforced strictly according to law or it becomes the most obnoxious means of confiscation." *Church*, C. J., in *Bank* v. *Elmira*, 53 N. Y. 59.

The doctrine has always from the earliest period been vigorously

maintained by this court. The cases are cited in the margin.* If in some of them it has been misapplied, their authority for the present purpose is not weakened. Its continued maintenance is of infinitely more importance than that the plaintiffs be reimbursed whatever they may have paid beyond their just share of the public expense in Northwood. *Mills* v. *Manchester*, 58 N. H. 39.

In *Pike* v. *Hanson*, 9 N. H. 491, it was held that where the statute required the selectmen, before entering upon their duties as assessors, to take and subscribe an oath to make a just and true appraisement of all ratable estate, an assessment made by them without taking the oath was void. The court say,—" This provision of the statute cannot be deemed merely directory. It was designed for the protection and security of the citizen, whose rights are in some degree in the discretion of the assessors. The legislature intended, by the special oath thus required formally to be taken and subscribed by the assessors, to guard as far as possible against all abuse of this discretion ; and we cannot dispense with so important a requisition." Selectmen cannot adopt an appraisal made at their request by another, " because the law intends that they should exercise their own judgment." *Hayes* v. *Hanson*, 12

---

* *Harris* v. *Willard*, Smith (N. H.) 63, 66 ; *Brown* v. *Smith*, 1 N. H. 36 ; *Johnston* v. *Wilson*, 2 N. H. 202 ; *Manufactory* v. *Barron*, 3 N. H. 36 ; *Brown* v. *Dinsmoor*, 3 N. H. 103 ; *Tidd* v. *Smith*, 3 N. H. 178 ; *Gove* v. *Lovering* 3 N. H. 292 ; *Waldron* v. *Tuttle*, 3 N. H. 340 ; *Eastman* v *Little*, 5 N. H. 290 ; *Cardigan* v. *Page*, 6 N. H. 182 ; *Nelson* v. *Pierce*, 6 N. H. 194 ; *Cambridge* v. *Chandler*, 6 N. H. 271 ; *Brewster* v. *Hyde*, 7 N. H. 206 ; *Cloutman* v. *Pike*, 7 N. H. 209 ; *Walker* v. *Cochran*, 8 N. H. 166 ; *Gibson* v. *Bailey*, 9 N. H. 168 ; *Smith* v. *Burley*, 9 N. H. 423 ; *Pike* v. *Hanson*, 9 N. H 491 ; *Cavis* v. *Robertson*, 9 N. H. 524 ; *Brewster* v. *Hough*, 10 N. H. 138 ; *Pickering* v. *Pickering*, 11 N. H. 141 ; *Hayes* v. *Hanson*, 12 N. H. 284; *Blake* v. *Sturtevant*, 12 N. H 567 ; *Bellows* v. *Parsons*, 13 N. H. 256 ; *Henry* y. *Sargeant*, 13 N. H. 321 ; *Homer* v. *Cilley*, 14 N. H. 85 ; *Wells* v. *Burbank*, 17 N. H. 393 ; *Smith* v. *Messer*, 17 N. H. 420 ; *Bean* v. *Thompson*, 19 N H. 290 ; *Grafton Bank* v. *Kimball*, 20 N. H. 107 ; *Lisbon* v. *Bath*, 21 N. H. 319 ; *Ainsworth* v. *Dean*, 21 N. H. 400 ; *Osgood* v. *Blake*, 21 N. H. 550 ; *Chase* v. *Sparhawk*, 22 N. H. 134 ; *Osgood* v. *Clark*, 26 N. H. 307 ; *Rice* v. *Wadsworth*, 27 N. H. 104 ; *Gordon* v. *Clifford*, 28 N. H. 402 ; *Gordon* v. *Rundlett*, 28 N. H. 435 ; *Lyford* v. *Dunn*, 32 N. H. 86, 87 ; *Perkins* v. *Langmaid*, 34 N. H. 315 ; *Perkins* v. *Langmaid*, 36 N. H. 501 ; *Davis* v. *Handy*, 37 N. H. 69 ; *Pierce* v. *Richardson*, 37 N. H. 306 ; *Clark* v. *Bragdon*, 37 N H. 562 ; *Lamprey* v. *Batchelder*, 40 N. H. 522 ; *Copp* v. *Whipple*, 41 N. H. 273 ; *Rogers* v. *Bowen*, 42 N. H. 102 ; *Lefavour* v. *Bartlett*, 42 N. H. 555 ; *Savings Bank* v *Nashua*, 46 N. H 389 ; *Railroad* v. *Prescott*, 47 N. H. 62 ; *Wells* v. *Company*, 47 N. H. 235 ; *Jaquith* v. *Putney*, 48 N. H. 138 ; *Fletcher* v. *Drew*, 48 N. H. 180 ; *Wells* v. *Company*, 48 N. H. 491 ; *Savings Bank* v. *Portsmouth*, 52 N. H. 17 ; *Cahoon* v. *Coe*, 52 N. H. 518 ; *Pickering* v. *Coleman*, 53 N. H. 424 ; *Bailey* v. *Ackerman*, 54 N. H. 527 ; *Roberts* v. *Holmes*, 54 N. H. 560 ; *Bowles* v. *Clough*, 55 N. H. 389 ; *Paul* v. *Linscott*, 56 N. H. 347 ; *Thompson* v. *Gerrish*, 57 N. H. 85 ; *Cahoon* v. *Coe*, 57 N. H. 556 ; *Taft* v. *Barrett*, 58 N. H. 447 ; *Sawyer* v. *Gleason*, 59 N. H. 140 ; *Buttrick* v. *Iron Co.*, 59 N. H. 392 ; *Perley* v. *Stanley*, 59 N. H 587 ; *Weeks* v. *Gilmanton*, 60 N. H. 500 ; *Thompson* v. *Ela*, 60 N. H. 562 ; *French* v. *Spalding*, 61 N. H. 395 ; *Mowry* v. *Blandin*, 64 N. H. 3 ; *Burpee* v. *Russell*, 64 N. H. 62 ; *Weeks* v. *Waldron*, 64 N. H. 149.

N. H. 289. If unauthorized persons unite with them in making the appraisal, their assessment is void. *Perkins* v. *Langmaid*, 34 N. H. 316, 326, 327—*S. C.*, 36 N. H. 502, 507, 508. The assessment of a tax larger by the smallest sum than is authorized by the statute is fatal to its validity. *Wells* v. *Burbank*, 17 N. H. 394, 412 (see Laws of 1871, *c.* 9, *s.* 1, G. L., *c.* 57, *s.* 4, *Taft* v. *Barrett*, 58 N. H. 450). In *Lisbon* v. *Bath*, 21 N. H. 325, 326, the court say,—" The power of taxation is one of the highest elements of sovereignty. It cannot be enforced upon the citizen unless by clear and distinct provisions of law. . . . Hence, whenever money is to be raised by taxation the specific purpose for which it is required must not only be inserted in a legal warrant, but must be voted at a legal meeting of the town, and be assessed and collected in a legal way." In *Weeks* v. *Waldron*, 64 N. H. 149, decided at the last term, it was held that a tax sale of non-resident land is invalid if the number of acres in the taxed parcel is not inserted in the collector's list, as required by Gen. Laws, *c.* 59, *ss.* 1, 2. The court say,—" Whether there was any sufficient reason in our opinion for the legislature to make this provision is of no importance. . . . The language of the statute is plain, and the legislative will, as expressed, cannot be disregarded. When the requirements of a constitutional statute are plain and positive, courts are not called upon to give reasons why it was enacted. It is never lawful in the construction of statutes to impute useless or frivolous conduct to the legislature."

In *Cahoon* v. *Coe*, 57 N. H. 556, it was held upon great consideration that, if in any case the provisions of the statute relating to the collection of a tax cannot be complied with, the result is not that the statute may be dispensed with, but that the tax cannot be collected. *Russell* v. *Dyer*, 40 N. H. 173, and 43 N. H. 396, was cited and approved. *Stanley*, J., says (*p.* 570), that the old maxim of the law, that every statute authority to divest the title of one without his consent and transfer it to another must be strictly pursued or the title will not pass, " is founded firmly upon principles of equity and natural justice." *Cushing*, C. J., says (*p.* 579),—" It does not appear to me that a tax is a debt of any higher obligation than any other honest debt; and I can see no reason why the requirements of the statute should not be as vigorously fulfilled in appropriating a man's property to the payment of a tax, as in appropriating it to the payment of a debt. There is no principle which I can find, in morals or justice, by which the state is bound to any more vigorous observance of its laws in enforcing the payment of other honest debts than in enforcing the payment of its own claims." After exhaustive argument upon a motion for a rehearing, *Stanley*, J., says (*p.* 597),— " When the statute requires notice to be given in a particular way before a man's estate can be declared forfeited, unless that notice is given his property is not taken under process warranted by law.

It matters not whether the notice which the law requires can be given or not ; the law of the land is not complied with unless it is given, and if it cannot be complied with, the property cannot be taken. The maxim *lex non cogit ad impossibilia* . . . may be applicable to this case ; but, as suggested by my brother *Cushing,* in the matter of the collection of the taxes, the impossible thing to which the law compelled no one was the collection of the tax where the provisions of the statutes cannot be complied with."

The right of every citizen that his property shall not be taken by the state under the name of a tax except in pursuance of authorizing statutes is not only affirmed by the common law, but is secured to him by the express terms of the constitution. The bill of rights (Art. 28) declares that "no subsidy, charge, tax, impost, or duty shall be established, fixed, laid, or levied, under any pretext whatsoever, without the consent of the people or their representatives in the legislature, or authority derived from that body." Without the authority of the legislature a tax can no more be levied than it can be laid. The levy of a tax is its assessment and collection. No tax laid upon property according to its value can be levied without a valuation and assessment. A tax is established and laid upon railroads by Gen. Laws, *c.* 62, *s.* 1, which provides that "Every railroad corporation in this state not exempted from taxation shall pay to the state an annual tax upon the actual value of the road," etc., but if the legislature had made no provision, express or implied, for its assessment and collection, it could not be levied. If under the constitution the duty of assessing taxes can be imposed upon the court, and if, in case a tax were laid with no express provision for its assessment, it could be presumed that the legislature intended that it should be assessed by the court, there is no room for the presumption where the legislature has particularly prescribed by what officers and in what manner it shall be assessed. In fact, the legislature has never laid or authorized a tax for the levy of which it has not made full and explicit provision. The provisions of statutes laying taxes (G. L., *c.* 62, *ss.* 1, 14, *c.* 65, *s.* 1, Laws of 1885, *c.* 64), or authorizing them to be laid (G. L., *c.* 23, *ss.* 2, 3, *c.* 38, *s.* 4), and specifying the property liable to taxation (G. L., *c.* 53), are no more imperative than those of chapters 54, 55, 56, and 57, declaring when, how, and by whom they shall be assessed. The whole matter of taxation rests in the control of the legislature, subject to the restraints of the constitution. It is as supreme within its province as the parliament of England. It can impose taxes, and require them to be assessed and collected under whatever limitations and conditions it may deem proper. It is competent for it to declare that they shall be assessed by certain officers and by no others, within a time limited and not afterward, in a prescribed manner and not otherwise. Whenever it has proclaimed the legislative will in these particulars, the taking of a man's property under the guise of

a tax assessed by any other officers, at any other time or in any other manner, is not taxation but robbery, and none the less so if it be done under the sanction of the court. It is no justification that the money taken is paid into the public treasury and applied to governmental purposes, that no more is taken than his just share of the public expense, and that if not taken his neighbors would be compelled to pay more than their due share of the common burden. All general laws may sometimes work injustice. If they do, it affords the legislature a good reason for amending them, but none to anybody for violating or ignoring them. In a government by law, the administration of abstract justice contrary to law is the most mischievous of all wrongs.

The legislature has declared that the selectmen, being first sworn to the faithful and impartial discharge of their duties (G. L., c. 41, ss. 1, 2), shall, annually in April, take an invoice of all the polls and estate liable to be taxed on the first day of that month (G. L., c. 55, s. 1), shall appraise all taxable property at its full and true value in money (G. L., c. 56, s. 1), and upon the invoice so made assess the taxes for that year. G. L., c. 57, ss. 1, 3. Except in cases not here material it has not authorized an assessment of taxes by any other persons, or in any other manner. If the adoption by the selectmen of an appraisal made by others under their direction, or a participation of others with them in making the appraisal, vitiates their assessment, it cannot be any the less void if both it and the appraisal are wholly made by strangers to the office. By the statutes and the constitution the right of every tax-payer that his property shall be subjected to no tax which is not assessed by the selectmen upon an appraisal made by them while in office, and under the sanction of their official oath, is as firmly secured to him as his right that no more than his proportional part of the public expense shall in any case be required of him. If for any reason his property cannot be so appraised, it cannot be taxed. The body charged by law with the power and duty of appraising the Pillsburys' shoe factory, and assessing upon it the tax of 1884, ceased to exist on the 31st day of March, 1885. No tribunal authorized to make the assessment is in existence. If justice requires that it should now be made, the remedy is with the legislature. *Heine* v. *Com'rs*, 19 Wall. 661; *Barkley* v. *Levee Com'rs*, 93 U. S. 258; *Thompson* v. *Allen County*, 115 U. S. 555, 560; *Overing* v. *Foote*, 65 N. Y. 264.

It is the legal right of Pillsbury Brothers that their property in Northwood be appraised and assessed for the taxes of any year by the selectmen of Northwood who hold the office during that tax year, and while they hold it. The lapse of time which has rendered such an appraisal and assessment for the tax of 1884 impossible, has not destroyed their right, but their liability, and the plaintiffs' right to the assessment which resulted from that liability. An assessment in 1886 of their tax for 1884 by the

defendants, either voluntarily or under the direction of the court, would be as much a violation of their right as would be an assessment by the selectmen of 1886 of double their just proportion of the taxes for that year. It is no answer that by the unlawful assessment they are required to pay only what upon principles of equity they ought to pay, and would have been compelled to pay if the tax of 1884 had been seasonably assessed. *Joyner* v. *School District*, 3 Cush. 567, 572; *Clark* v. *Norton*, 49 N. Y. 243, 248; *Cavis* v. *Robertson*, 9 N. H. 524, 531; *Grafton Bank* v. *Kimball*, 20 N. H. 107, 113.

The tax-payer's right that his neighbors shall contribute their just proportion to defray the public expense is no more sacred than that of a creditor to have his debtor's property applied in satisfaction of the debt. In neither case is the right absolute. It is qualified by the condition that it can be enforced in conformity with the provisions of the statutes. If it cannot be so enforced, the right does not exist.

*Metcalf* v. *Gilmore*, 59 N. H. 417, *Peaslee* v. *Dudley*, 63 N. H. 220, *Walker* v. *Walker*, 63 N. H. 321, and *Owen* v. *Weston*, 63 N. H. 599, are not relevant. The questions in those cases related merely to remedy and procedure, and it was comparatively unimportant how they were decided. Here the question is one of right.

These considerations dispose of the question before the court. The petition, no amendment being asked for, should be dismissed on both grounds, (1) because the defendants have no power to assess the tax, and (2) because the plaintiffs have no right to the assessment. They show also that the result would be the same if the petition were amended by making the present selectmen of Northwood, or the Pillsburys, defendants, although as against them no judgment can now be pronounced.

*Mandamus* is a discretionary writ. It is not awarded in every case where it is the appropriate remedy, and the applicant's right undoubted. High Ex. Rem., *s.* 9. Here the plaintiffs' pecuniary injury is trifling,—so small that the maxim *de minimis non curat lex* may well be applied. *Mills* v. *Manchester*, 58 N. H. 39. The selectmen's conceded want of power voluntarily to correct assessment errors after the lapse of the tax year has existed for more than one hundred years. The evil, if it be one, is easily curable by the legislature, and is especially fit for its consideration. It cannot be denied that the authority of the court to correct it is at least doubtful. For these reasons, if there were no other, a wise judicial discretion requires that the petition should be dismissed. It is essential to a free government that its executive, legislative, and judicial powers be kept as separate from and independent of each other as the nature of government will admit. Bill of Rights, Art. 37. The judiciary has never hesitated to exert its authority

to keep the legislative department within its province. It controls both that and the executive branch so far as to keep them from exceeding their constitutional powers. The court is the final arbiter of all controverted legal questions. Neither the legislature nor the executive can revise its action or reverse its judgments. It is supreme. If it condemns without notice, adjudges without hearing, denies justice, or, what is equivalent, administers that which it is pleased to call justice, in defiance of the legislative will, the people have no remedy except by impeachment and removal, or by revolution. It ought, therefore, while it is vigilant to restrain usurpations of the law-making and law-executing branches of the government, to be especially watchful that it do not itself trespass upon the domain of either. It is wiser to refer the correction of the occasional mischiefs incidental to all general laws to the legislature, which is always at hand, than to assume the exercise of a questionable jurisdiction.

BINGHAM, J., concurred in this opinion.

The following mandate was issued:

*The State of New Hampshire.*
*Rockingham, ss.*
[L. S.]
*To the selectmen of the town of Northwood, in said county.*

*Whereas the following judgment has been rendered:—*

"The State of New Hampshire.
"Rockingham, ss.
"In the supreme court of said state, at the law term held at Concord on the first Tuesday of December, 1886.

"Elbridge G. Boody, Irving Dow, Charles F. Cate, Lewis E. Kimball, Caleb W. Hanson, Charles A. Hill, Charles Wingate, William Knowles, John C. Hill, John R. Dow, Warren P. Swain, N. Rollins, M. P. Knowlton, Joseph S. Trickey, and J. A. Cate, all of Northwood, in said county, plaintiffs,

against

William D. Watson, Enoch Fogg, and James W. Hoyt, all of said Northwood, defendants.

"On a petition, for that said plaintiffs complain against said defendants, ʻand say that the plaintiffs are owners of real and personal estate in said town of Northwood, and are legal voters and tax-payers there; that at the annual meeting holden within and for said town on the second Tuesday of March, 1884, said Watson,

Fogg, and Hoyt were duly elected and qualified as selectmen of said town for the year next ensuing; that as such selectmen they were bound by law to take an invoice of all the estate liable to be taxed in said town on the first day of April, 1884, and seasonably thereafter to assess thereon all state, county, town, and other taxes which by law they might be required to assess; that on said first day of April, John J. Pillsbury and Alpha J. Pillsbury, both of said Northwood, and doing business under the name and style of Pillsbury Brothers, were the owners of certain real and personal estate in said Northwood of the value of fifteen thousand dollars, liable to be taxed; that warrants from the treasurers of the state of New Hampshire and the county of Rockingham aforesaid were duly furnished to said selectmen, whereby they were required to assess a tax amounting to a large sum, to wit, the sum of fifteen hundred dollars; that certain taxes were also voted by said town for the year aforesaid, amounting to a large sum, to wit, the sum of two thousand dollars, all of which taxes said selectmen were by law bound to assess upon the aforesaid property of said Pillsbury Brothers: yet the said selectmen, although notified and requested to assess said taxes upon said estate, neglect and refuse so to do. And your petitioners say that they have no other remedy at law than the writ of *mandamus*. Wherefore they pray that the said Watson, Fogg, and Hoyt, selectmen as aforesaid, may be ordered and commanded by this court to assess the taxes aforesaid upon the estate aforesaid, and that a writ of *mandamus* may be issued by said court, directed to them for the purpose aforesaid, and for such other relief as may be just.'

"The foregoing petition of the plaintiffs was filed on the third day of June, 1884, was entered at the law term of said court held at Concord on the first Tuesday of June, 1884, and was then postponed for notice returnable August 28, 1884, at which time all parties appeared; and it was ordered that the facts be found at the trial term of said court.

[The plea and replication are fully recited.]

"At the next trial, held on the third Tuesday of October, 1884, the parties agreed that the following are the facts:

"'The Pillsbury Brothers, named in said petition, are residents in the town of Northwood, and shoe manufacturers, and have been engaged in said business since about 1867, and during the whole time have had invested in their business, as shoe manufacturers, a capital exceeding ten thousand dollars.

"'At a legal meeting of said Northwood, holden on the 21st day of June, 1873, the following resolution was passed, in accordance with an article inserted in the warrant therefor, under Gen. Sts., *c.* 49, *s.* 9. "*Resolved*, That we exempt from taxation any shoe manufactory, or any other manufactory that has been or may be established in this town for the term of ten years, provided there shall

be invested in such manufacturing business at least ten thousand dollars, and is established prior to January first, 1875."

" 'During the period of ten years fixed by said resolution the Pillsbury Brothers' establishment and capital invested therein were not taxed by said town.

" ' On Sept. 23, 1882, at a legal meeting of said town, the following vote was passed, in accordance with an article inserted in the warrant therefor, under Gen. Laws, *c.* 53, *s.* 10, that "the town will . . . exempt from taxation any shoe manufacturing establishment and the capital used in operating the same for the term of ten years, which has been or may be established in said town, or any other manufacturing establishment that has been or may be established, provided there shall be invested in any such manufacturing business at least ten thousand dollars, and may be established prior to January 1, 1884."

" ' It was under this last vote that the exemption of the Pillsbury Brothers' establishment and capital invested therein was claimed April 1, 1884. When the vote of June 21, 1873, and that of Sept. 23, 1882, were passed, there was in said town no shoe manufactory except that of the Pillsbury Brothers, and no other was then contemplated.

" ' There being some question as to the sufficiency of said vote of Sept. 23, 1882, the town, at a legally holden meeting, on July 24, 1884, under an article in the warrant therefor, passed the following vote : " Voted to exempt from taxation for the term of ten years the shoe manufacturing establishment of Pillsbury Brothers in this town and the capital used in operating the same ; said manufacturing establishment and the capital used in operating the same exceed in value the sum of five thousand dollars." At the time of the passage of the vote of Sept. 23, 1882, the capital invested by the Pillsbury Brothers was much larger than that invested at the time of the passage of the vote of June 21, 1873.

" ' Defendants proved that after the passage of the vote of Sept. 23, 1882, and relying upon it, the Pillsbury Brothers reorganized their business, and expended several thousand dollars that they otherwise would not ; and that they continued their business in said town, relying upon said vote of 1882.'

" This cause came on to be heard on the foregoing agreed facts, and was argued by counsel, and thereupon all and singular the premises being seen and by the court now here fully understood, and mature deliberation being thereupon had, it appears to this court, and it is accordingly considered and adjudged, that the said votes of the town of Northwood of September 23, 1882, and July 24, 1884, in the record mentioned, so far as they purport or were intended to exempt from taxation the manufacturing establishment and capital, or any property, of the said Pillsbury Brothers, are repugnant to the law of said state, and so not valid, and therefore that the selectmen of said Northwood, as a municipal court

of assessment, erred in their judicial judgment and action upon said invalid votes, and in their assessment of taxes for the year 1884, whereby taxable property of said Pillsbury Brothers was, by the said erroneous judgment and action of said court, illegally exempted from taxation; and that the said court ought to have assessed to said Pillsbury Brothers the taxable property illegally exempted as aforesaid: Whereupon, it is considered, ordered, and adjudged by the court now here that the exemption allowed and adjudged by the said court of assessment as aforesaid, and the judgment of said court of assessment so far as it illegally exempts taxable property as aforesaid, be and the same hereby are reversed and annulled; that the error of exemption in said assessment be corrected; that an assessment of a tax be made to said Pillsbury Brothers on their property illegally exempted as aforesaid, at its value on the first day of April, 1884, and at the rate of that year; that the tax thus assessed be collected by suit or otherwise; that the foregoing orders of assessment and collection be carried into execution by the defendants' successors in the office of selectmen of said Northwood, as a municipal court of assessment; and it is by this court now here further ordered and adjudged that a special mandate do go from this court to the selectmen of said Northwood as such, and as a municipal court of assessment, to carry into execution the foregoing orders of assessment and collection; that if any judgment heretofore rendered in this cause is not compatible with this judgment, it be so modified as to conform hereto; that if any mandate, writ, or other process for the execution of any judgment in this case has issued, the same be recalled and cancelled; and that execution be issued in favor of the plaintiffs against the defendants for their taxable costs."

*Now, therefore, we command you, the selectmen of said Northwood, to carry into execution the foregoing orders of assessment and collection.*

*Witness, Charles Doe, Esquire, the* 26th *day of February,* 1887.
*C. G. Conner, Clerk.*